(Decided 21st June, 1867.)

LYCURGUS N. PHILLIPS, Executor of NOAH PHILLIPS *vs.* ISAAC E. PEARSON and others.

*From what an Appeal will not lie—Act of* 1846, *chapter* 271, *to prevent Frauds in Mortgages, &c., construed.*

Upon a bill filed for the sale of certain mortgaged premises, by the executor of the mortgagee, the party in possession claiming title, as a purchaser from the grantee of the mortgagor, and one of the defendants, filed his answer admitting the allegations of the bill, but pleading that as against him the mortgage was invalid, there being no affidavit by the mortgagee that the consideration was true and *bona fide* as therein set forth. The Court delivered an opinion, in which it was stated that the bill could not be sustained, and must be dismissed with costs to the defendant. HELD:

That the opinion of the Judge was an incomplete act announcing his intentions, which he might subsequently change, and not a decree, or order in the nature of a decree, from which an appeal would lie.

Where a party purchases mortgaged property, not only with knowledge of a debt due thereon, but with the express understanding and agree-

Phillips, Ex'r, *vs.* Pearson *et al.*

ment that he was to apply the consideration to the extinguishment of the debt so due, a part of which he subsequently pays, and the balance admits in writing to be due as claimed by the executor of the mortgagee, he cannot in equity or conscience protect himself, as owner of the premises, from the charge thereon, by the plea that the mortgage lacks the affidavit of the mortgagee that the consideration is true and *bona fide* as therein set forth.

The object of the Act of 1846, chapter 271, was to prevent conveyances for pretended considerations in fraud of *bona fide* creditors and purchasers. It does not declare the mortgage shall be void, but that no mortgage shall be valid and effective, except as against the mortgagor or grantor, unless sanctioned by an affidavit.

Persons claiming by or through the mortgagors and grantors, with notice, not creditors or *bona fide* purchasers, stand in the position of the mortgagors and grantors.

An act designed to prevent fraud should not be so construed as to promote it.

APPEAL from the Equity side of the Circuit Court for Frederick County.

The bill in this case was filed on the 14th of December, 1863, by the appellant, as executor of Noah Phillips, and charged in substance that a certain Isaac Wright, being indebted to the said Noah in the sum of $1,400, evidenced by his four single bills of $350 each, dated 7th of April, 1848, payable respectively at two, three, four and five years after date, with interest from date, to secure payment thereof, did, with his wife, execute to the said Noah a mortgage of the same date of certain real estate in Frederick County, conditioned to pay these notes as they matured, and upon failure thereof, with power to the mortgagee to sell the lands, upon giving three weeks notice of the time, place, manner and terms of sale by publication in some newspaper printed in Frederick County, either for cash or on credit, as he should deem expedient, and out of the proceeds of such sale to pay, first, all costs, charges and expenses incident to the trust ; secondly, to pay whatever balance should remain unpaid

of the said four notes, whether actually due, according to the tenor of such notes, at the time of sale or not, and then to pay over to the said Isaac Wright, or his assigns, whatever balance should remain ; and upon such sale being made, and on the whole purchase money being paid, the said mortgagee should by a good and sufficient deed convey to the purchaser or purchasers the said property. This mortgage was duly acknowledged by the grantors, but there was no affidavit of the mortgagee that the consideration in said mortgage was true and *bona fide* as therein set forth. The bill further charged that Wright and wife, by deed dated the 7th of December, 1848, sold and conveyed said lands to one Abraham Wolfe, who, with his wife, by deed dated the 11th of February, 1854, conveyed a part of said lands to John Agnew and Raphael Jarboe ; and the said Noah Phillips, by his deed dated the 25th of the same month, released to Agnew and Jarboe that part of the mortgage premises so conveyed to them. It was further charged by the complainant that he had been informed and so believed that one Isaac E. Pearson claimed title to the said mortgaged premises, either as purchaser from said Isaac Wright or Abraham Wolfe, and was then in possession without a conveyance for the same ; that sundry payments on the mortgage debt had been made, leaving a balance of $701.17, with interest from the 4th of July, 1854, which had not been paid, either to the said Noah, in his lifetime, or to the complainant, his executor, since his death ; that Abraham Wolfe had died, leaving numerous children, his heirs-at-law, some of whom were non-residents. The relief prayed by the bill was the sale of the mortgaged premises, or so much thereof as should be necessary to pay the aforesaid claim with interest; the appointment of a trustee to make such sale, and general relief. The parties made defendants were the children of Wolfe, his heirs-at-law, and Isaac E. Pearson. With the bill

was filed, among other things, a statement of the complainant's claim, on which was written by Pearson himself as follows: "The above is correct up to April 1st, 1854; on the 4th of July, 1854, paid Noah Phillips seven hundred dollars, for which a receipt is given. J. E. Pearson."

A decree *pro confesso* was obtained against the non-resident defendants, and an interlocutory decree against the other heirs of Wolfe. Pearson appeared and filed an answer on the 15th of April, 1864, in which he admitted the facts alleged in the bill, but claimed that as against him, the mortgage was invalid, it not having been executed in accordance with the laws of the State, there being no affidavit that the consideration was true and *bona fide* as therein set forth. He prayed that the bill might be dismissed. An amended bill was then filed charging that Pearson at the time he purchased the mortgaged premises from Wolfe or his agent Wright, had actual notice of the said mortgage executed by Wright and wife, and that since the purchase by him of the mortgaged premises, he had paid a part of the mortgage debt to the said Noah Phillips, and had admitted in writing, signed by him, the balance of the mortgage debt as claimed in the bill. To this amended bill Pearson filed an answer similar to the first. A commission was issued and Isaac Wright proved, among other things, that he executed the deed conveying the property to Wolfe, and that the consideration for it was, that Wolfe should pay certain claims against the deponent in the hands of Pearson, amounting to about $400, and that Wolfe paid those claims to Pearson, and paid no money either to deponent or to Noah Phillips; that deponent was the agent for Wolfe in the subsequent sale of the property to Pearson for $1,750 or $1,800, but none of the purchase money therefor was paid to Wolfe or deponent; that the terms of the sale to Pearson were, that he was to pay to

Noah Phillips the amount of his mortgage, and the balance was to be applied by Pearson to the payment of outstanding paper of the deponent, and the residue, if any, was to be paid to the deponent. The Court (NELSON, J.) delivered an opinion, sustaining the objection taken in the answer of Pearson, and stated that the bill, as to him, must be dismissed with costs. No formal order or decree was passed. The complainant. appealed.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and GOLDSBOROUGH, J.

*Oliver Miller,* for the appellant.

The sole objection to the relief asked is, that the deed executed on the 7th of April, 1848, is a mortgage within the terms of the Act of 1846, ch. 271, and void as against the appellee, for want of an affidavit, by the mortgagee, of the truth and *bona fides* of the consideration therein set forth. It is respectfully insisted :

That this deed is not a mortgage within the terms of that Act. In considering this point, the question is not whether the instrument is a *quasi* mortgage, or such as a Court of equity will treat as a mortgage, but whether in a strict, legal, technical sense, the instrument is a mortgage or not? It is true, that in this case the deed is made *directly* to the creditor, but this is not the only essential requisite of a mortgage. The mortgagee may enter or maintain ejectment upon default, but in this case, the authority given him by the instrument is *on default*, to sell the property and pay the debt, and the surplus to the grantor. It is therefore submitted that this instrument is not a mortgage within the meaning of the Act of 1846. *Charles vs. Clagett,* 3 *Md. Rep.*, 82; and cases and authorities there cited; *Stockett, Adm'r of Locke et al., vs. Holliday and Wife et al.,* 9 *Md. Rep.*, 480; *Fouke vs.*

*Fleming & Douglass,* 13 *Md. Rep.,* 392; *Wilson et al. vs. Russell et al.,* 13 *Md. Rep.,* 484.

But suppose this deed is within the terms of this Act, it will then be insisted that the appellee Pearson is not in a position to avail himself of this objection. He is not a creditor nor a *bona fide* purchaser without notice. On the contrary, he admits that he purchased with *actual knowledge* of the mortgage, and after his purchase, paid part of the mortgage debt. Does the law in question apply to such a case? Its title is, "An Act to prevent *frauds* in mortgages and bills of sale." Judge Mason, in 3 *Md. Rep.,* 87, says, the design of the Act is obvious,— "its purpose manifestly was to prevent conveyances for pretended considerations in fraud of *bona fide creditors.*"

In 16 *Md. Rep.,* 207, *Cockey vs. Milne's Lessee,* the Court say, the want of an affidavit under this Act is fatal to the validity of the mortgage, "whether it be assailed by a creditor or a subsequent *bona fide* purchaser;" "it was designed not merely for the prevention of fraud, but for the *benefit* of *creditors* who may claim against such an instrument as void in law under the Act, however the question of actual fraud may stand." See also the case of *Denton and Wife vs. Griffith,* 17 *Md. Rep.,* 304. All these authorities justify the inference, that the protection of that Act is extended only to creditors and *bona fide* purchasers without notice. This was the mischief to be remedied. Surely Pearson cannot come within this category, for he not only purchased with notice of the mortgage but under an agreement to pay the mortgage debt. Again, the evidence shows him to be in privity with the grantor, and he stands in no better position than the grantor.

Though this instrument may be void as a mortgage for want of the affidavit required by the Act, yet it is certainly good, and can be enforced in equity as an agreement to execute a mortgage, as against a party who has

actual notice thereof at the time of his purchase. This relief, it is submitted, could be granted in this case under the prayer for general relief. Or at all events, the equity of the case is so clearly with the appellant that this Court should order the case to be remanded for the purpose of amending the allegations of the bill under the 28th section of Article 5 of the Code of Pub. Gen. Laws. *Alexander et al. vs. Ghiselin et al.*, 5 *Gill*, 138 ; *Crain vs. Barnes and Fergusson,* 1 *Md. Ch. Dec.*, 151 ; *Gibson et al. vs. McCormick,* 10 *G. & J.*, 65 ; *Tiernan vs. Poor and Wife, &c.*, 1 *G. & J.*, 216 ; *Brundige et al. vs. Poor and Wife,* 2 *G. & J.*, 1.

In reply to the appellee's motion to dismiss the appeal, which was certainly made at a very late stage of the case, it is respectfully submitted that the authorities relied on do not authorize the dismissal. On the contrary, it is insisted that the record in this case does show such a final decree, or order in the nature of a final decree, as warrants an appeal therefrom. The record shows that the opinion of the Court was filed on the 18th of March, 1865, and the Judge decided that the mortgage was void and no relief could be granted under the general prayer, and then says directly and positively : "Viewing the whole case as presented to me, I *think* this bill cannot be sustained, and must be dismissed with costs as to the defendant, Pearson." Is not this as formal an order dismissing the bill as the law requires? If, instead of saying "I think," he had said "I adjudge," or "I decree," this bill cannot be sustained, and must be dismissed with costs; it is submitted there would be no ground whatever for the objection. Is not the language used equivalent to that supposed? When a Judge says in judicial language, "I *think* this bill cannot be sustained and must be dismissed," he determines that fact. One of the well known meanings of the verb "to think" is "to judge, to conclude, to have opinion, to determine." *Worcester's Dictionary.*

But it is urgently requested on the part of the appellant that this Court would express an opinion on the points in the case, even if they reach the conclusion that the appeal must be dismissed.

*A. B. Hagner* and *Attorney General Randall,* for the appellee.

On the motion by the apellee to dismiss this appeal, it is submitted that the appeal has been prematurely taken. The Court filed an opinion which concluded with these words : " Viewing the whole case as it is presented to me, I think this bill cannot be sustained, and must be dismissed with costs as to the defendant, Pearson." Thereupon the prayer for an appeal was entered in behalf of the complainant, the appeal granted and the record brought up. But there was no decree or order passed or signed by the Court, nor any referred to as having been passed or signed, nor was an appeal prayed from any decree or order. An appeal will not lie from the mere *opinion* of the Court ; the Court may change its opinion and pass a decree suited to such change. It is only from what the Court *has done,* and not from its intimations of what it will do, that an appeal will lie. Nothing final, nothing conclusive has been done ; hence no such appeal will lie as has been taken in this case. *Hagthorp and Wife, &c., vs. Hook's Adm'rs, d. b. n.,* 1 *G. & J.,* 2 70 ; *Roberts et al. vs. Salisbury et al.,* 3 *G. & J.,* 425 ; *Hatton vs, Weems,* 10 *G. & J.,* 377 ; *Ware et al. vs. Richardson,* 3 *Md. Rep.,* 505..

Should the Court, however, not dismiss the appeal, but consider the case upon its merits, the appellee will contend that the Court below was right, and the bill should be dismissed with costs as to him.

1st. Because the Act of 1846, chapter 271, was in force on the 7th day of April, 1848, when the mortgage (on which this suit was instituted) was executed. One Act, 1847,

chapter 305, supplementary to this, curing defects in the execution of mortgages which had then been executed; another, 1856, chapter 113, making provision for certain special exceptions, and the insertion of these provisions in Article 24 of the Code of Public General Laws, all clearly show that it is the settled and permanent policy of this State to require the affidavit of the mortgagee to all mortgages, and to forbid any mortgage being held *valid* or effective, except as against the mortgagor himself, unless this affidavit be made thereto. *Cockey vs. Milne's Lessee,* 16 *Md. Rep.,* 207; *Denton and Wife vs. Griffith,* 17 *Md. Rep.,* 305.

2d. The appellant contends that the appellee having by his answer admitted the facts in the amended bill, he had notice of the existence of the mortgage, and is thereby precluded from taking any advantage of the absence of the affidavit of the mortgagee to the *bona fides* of the consideration; that the protection of the Act is extended only to creditors and *bona fide* purchasers without notice. Our reply to that position is, that *so it is not written in the law;* the law declares all such mortgages invalid and of no effect, as to all persons, no matter whether ignorant or cognizant of their existence, excepting the grantors alone. It is an inherent and radical defect in the mortgage itself, rendering the instrument void and of no effect, and which cannot be cured. Suppose the appellee had notice of the mortgage and paid a part of the mortgage debt, and knew that the mortgage was void, such knowledge and such payment would not make it a valid mortgage. Such payment at most was but a mere acknowledgment of a debt, which might possibly enable the party to proceed to recover the balance, but which could not establish the *void* mortgage, or justify any proceedings founded on such void mortgage.

3d. Is there evidence that the appellee had actual knowledge that this mortgage had been defectively exe-

cuted and was void, and that he waived that objection ? We find none such. The appellee in his answer to the amended bill merely admits the facts stated in the bill; and the facts as to this point are merely that the appellee had actual notice of the mortgage and purchased, having such notice. There was no averment that he knew of this defect in the mortgage or waived it, or did any act which was not quite consistent with his making this defence in good faith against an attempt to enforce a void instrument as a valid mortgage; there was no charge of fraud, and nothing inconsistent with fair dealing on the part of the appellee.

4th. But it is said that this instrument is not a *mortgage,* but a *deed of trust,* and therefore not within the provisions of the Act of 1846, chapter 271, and its supplements. The characteristic peculiarities of a mortgage are, that it is a conveyance to the *creditor* to secure his debt; that the mortgagor may redeem the mortgaged premises; that in default of payment he may sell; this is just such a conveyance. This instrument has been called a mortgage and proceeded on as such, and always treated as a mortgage; the mortgagee himself calls it a mortgage; the original bill, the notice of publication, the petition to amend the bill, the amended bill, the answers of the defendant, the interrogatories to witnesses, and their answers, and the opinion of the Court, all unite in calling this paper a *mortgage,* and in calling it by no other name; and the first intimation that this instrument is not a mortgage is in the argument of the counsel for the appellant. But let it be called a mortgage or a deed of trust, it is within the reason of the law, and the policy of the law comprehends it. The analogies of the law support the defence of the appellee, though he admits the mortgage existed. A party may admit a parol contract in relation to land to exist, and yet plead the Statute of Frauds successfully against its execution, because it is

not in writing. *Jones vs. Slubey*, 5 *H. & J.*, 383 ; *Winn & Ross vs. Albert*, 2 *Md. Ch. Dec.*, 169 ; *Albert and Wife vs. Winn and Ross et al.*, 5 *Md. Rep.*, 66. So with respect to a usurious loan admitted, the defendant may rely upon the usury as a defence against the mortgage securing it, without paying or tendering the money borrowed, as was required by the Act of 1845, chapter 352, and the Court never will enforce the void contract. *Trumbo, Exc'r of Neff, vs. Blizzard and Jacobs*, 6 *G. & J.*, 18.

5th. The appellant maintains, that if this instrument be void as a mortgage, it is good in equity as an agreement to execute a mortgage, against the appellee having notice of it at the time of his purchase, and relief may be granted under the prayer for general relief. The original bill contains a prayer for general relief, but that bill did not allege notice of the mortgage in the appellee, and hence the necessity to allege that notice in the amended bill ; the amended bill then goes on to pray specific answers to those facts inserted therein, and that "the complainant may have such relief against Pearson as he has prayed for in his original bill." There is, therefore, no prayer for general relief in the amended bill, nor can such prayer in the original bill apply to these new matters, notice, &c., charged in the amended bill; and in it alone. But supposing the prayer for general relief to be in the amended bill, or that the appellant can avail himself of that prayer which is set forth in the original bill in a suitable case ; this is not such a case. The appellant has here refused to make the affidavit which the law requires, and there is therefore, according to the legal presumption from such refusal, no such *bona fides* and valuable consideration in this transaction, as by law is required. And after having refused to comply with the law, he invokes this Court to make good his neglect or want of *bona fides* in the transactions, and decide this mortgage to be valid,

which the law pronounces void. The cases of *Alexander et al. vs. Ghiselin et al.*, and *Crain vs. Barnes and Fergusson*, referred to by the appellant, are cases of personalty, where there was no violation of law as in this case. In these cases the rigor of the law has been somewhat mollified by the special equitable circumstances of the case, none of which exist in this case.

BOWIE, C. J., delivered the opinion of this Court.

The preliminary question in this case on the motion to dismiss, is whether there is any final decree, or decretal order, from which an appeal could be taken.

The only entry on the record, manifesting the action of the Court below, is an opinion of the Judge, concluding as follows, "viewing the whole case as it is presented to me, I think this bill cannot be sustained, and must be dismissed with costs as to the defendant Pearson."

Upon the filing of which the complainant, without waiting the further order of the Court, on the same day, entered an appeal.

There were several other defendants in this case, as to some of whom a decree *pro confesso*, and to others an interlocutory decree, had previously been passed. The opinion of the Court made no disposition of the cause as to these parties.

If the paper filed by the Judge in this case can be considered as a final decree or order in the nature of a final decree as to Pearson, it was clearly not so as to the other defendants; but in our judgment, it can be regarded only as the *opinion* of the Judge, to be followed by an order or decree, finally determining the rights of all the parties.

In the case of *Hagthorp, &c., vs. Hook's Adm'rs, d. b. n.*, 1 *G. & J.*, 309, the Chancellor, in his introductory remarks, discussed the principles which he considered applicable to the case, and in favor of the appellee, and announced his intention to decree accordingly. To enable him to do which

he passed an order directing an account to be stated in accordance with his views.   On appeal from that order, Judge Dorsey, delivering the opinion of this Court, said, it was true the Chancellor had distinctly announced what he intended to do, but his *intentions* formed no ground for an appeal; he might abandon or change them *ad libitum.*   "It is only from what he has done, not from what *he intends to do,* that an appeal will lie."   Reasoning aside, he said, the question was put to rest by the case of *Snowden et al. vs. Dorsey et al.,* 6 *Har. & John.,* 114.   There upon a bill filed for a conveyance of land, the Chancellor declared, in his opinion, the complainants' claim to relief had been established, and ordered an account of the rents and profits preliminary to a final decree.   Upon appeal from that order, after argument and a thorough examination of the practice and decisions upon the subject, this Court dismissed the appeal.

So in the case of *Roberts et al. vs. Salisbury et al.,* 3 *G. & J.,* 425, the Chancellor expressed his opinion upon the merits of the case, and referred the cause to the auditor for an account.   An appeal from that order was considered premature.

It may be said that in all these cases the opinion of the Court was the precursor of the order appealed from and indicated a further act to be done, whilst in this case there is no such intimation.   Yet the opinion in the present case does not amount to a final act; it concludes with the expression of an opinion, not the announcement of a judgment or decree.

An appeal was allowed in the case of *Thompson vs. McKim et al.,* 6 *H. & J.,* 302, upon the ground, that the facts on which the order was based were required to be either admitted or established, so as to be open to no controversy at any subsequent stage of the proceedings, and material and irreparable injury was done by the order, let the subsequent decree of the Chancellor be what it

might, or although no future decree be ever made. It was attempted to distinguish *Hagthorp, &c., vs. Hook's Adm'rs* from *Snowden et al. vs. Dorsey et al.*, by quoting an expression, used by the Court in *Thompson vs. McKim,* stating that the order passed in *Snowden vs. Dorsey* bore no impress of the Chancellor's judicial opinion upon the merits of the case, whereas the order in the case at bar (*Hagthorp's case*) did bear such impress. This Court declared the argument rested " upon a misconception of this expression of the Court." They did not mean to say that the introductory remarks to the order in *Snowden et al. vs. Dorsey* bore no impress of the Chancellor's opinion upon the merits of the case, because the reverse is most palpably the fact ; it does bear the impress of his opinion, but not of his "judicial opinion." The impress of the Chancellor's "judicial opinion," in the sense in which the Court have used it, being synonymous with what he has adjudged or decreed.

This emphatic distinction between mere opinion and "judicial opinion," leaves no doubt of the difference in their legal effect ; the former being interlocutory, the other final in its character.

In deference to these decisions, we are obliged to consider the opinion of the learned Judge filed in this cause as an incomplete act announcing his intentions, which he might or might not subsequently change, and not a decree or order in the nature of a decree from which an appeal will lie.

As the Counsel of both parties have argued this case fully upon its merits, as well as on the motion to dismiss, to avoid the necessity for a further appeal to this Court, we will express our opinion as to the law which should govern it in any future proceedings.

The original and amended bill charge that the real estate conveyed by Wright and wife to Phillips by the deed No. 5, and afterwards conveyed to Wolfe, was sold by the latter

to Pearson, who was in possession of the same, but had received no deed for it, but at the time he purchased, he had actual notice of the deed executed by Wright and wife to Phillips, and purchased with knowledge of the debt due thereon ; that Pearson, since the purchase, had paid part of the debt to Phillips, and admitted in writing the balance of the debt claimed by the complainant's bill.

The conveyance or instrument No. 5, exhibited with the bill, being the deed from Wright and wife to Phillips, is styled in the proceedings and treated as a mortgage, and the paper writing in Pearson's hand and signed by him, admitting the balance due, is Exhibit No. 9.

Pearson, in his answer to the original and amended bills, admitted all the facts alleged, but pleaded that as against him, the Exhibit No. 5 was invalid as not having been executed according to the laws of the State, there being no affidavit of the *bona fide* consideration to said mortgage.    Whether the said deed is to be treated simply as a deed of trust or as a technical mortgage, this Court need not now consider, in view of the facts admitted by Pearson and proved in this cause.

If a deed of trust, the decisions of this Court heretofore, in analogous or similar cases, would tend to show the inapplicability of the provisions of the act of 1846, chapter 271.   *Charles vs. Clagett*, 3 *Md.*, 98.   And if regarded as a technical mortgage, still, inasmuch as Pearson *is charged with*, and *has admitted actual notice in his answer*, we hold he cannot protect himself in equity or conscience, as the owner of said premises, from the charge on them.

The object of the act of 1846, chapter 271, as indicated by its title and announced in several decisions of this Court, was to prevent conveyances for pretended considerations in fraud of *bona fide* creditors and purchasers.   3 *Md. Rep.*, 87 ; 16 *Md. Rep.*, 207.   The act does not declare the mortgage shall be void, but that no mortgage shall be

valid and effective, except as against the mortgagors or grantors, unless sanctioned by an affidavit.

Persons claiming by or through the mortgagors and grantors with notice, not creditors or *bona fide* purchasers, stand in the position of the mortgagors and grantors, otherwise the saving or exception of them in the act would be nugatory. The letter, as well as the spirit of the law, requires this construction; "*volenti non fit injuria.*"

An act designed to prevent fraud should not be so construed as to promote it.

On this principle, the letter of the Statute of Frauds has been disregarded, in order to preserve its spirit and policy. In allusion to this rule of construction, Lord Redesdale remarks, "The Statute of Frauds says that no action or suit shall be maintained on an agreement relating to lands which is not in writing signed by the party to be charged therewith, yet the Court is daily in the habit of relieving, where the party seeking relief has been put into a situation which makes it against conscience in the other party to insist on the want of writing so signed." *Foxcroft vs. Lester,* 1 *Lead. Cases in Equity.*

The facts in this case, as proved by Wright, exhibit Pearson's responsibility in bold relief. He not only had actual notice of the lien upon the land purchased by him, but he took it with the express understanding and agreement that he was to apply the consideration to the extinguishment of the debt due and intended to be secured by the deed, and other debts in his hands against Wright, before he obtained his deed; and the amount still due by him is more than sufficient to pay the complainant's claim. It would be against conscience to allow a purchaser, taking lands under such an agreement, to repudiate the debt which he engaged to pay as part of the consideration for them. The complainant is entitled to relief upon an amendment of the bill with proper allegations, correspond-

ing with the evidence, which it will be competent in the Court below to allow.

*Appeal dismissed.*

(Decided 21st June, 1867.)

CRAIN, J.  Though I did not sit at the argument of this case, I have examined the record and briefs, and conferred with my brothers upon the several questions involved, and entirely concur in the opinion of the Chief Justice.