685 A.2d 817

**Randall Campbell JENKINS**

v.

**Nellie Madolyn JENKINS.**

**No. 117, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 2, 1996.

---

5. *Hoc quidem perquam durum est, sed ita lex scripta est.* (This indeed is very hard, but such is the written law.)

392

394

Emile J. Henault, Jr., Glen Burnie, for Appellant.

Kimberly D. Marshall (Renahan & Marshall, on the brief), Waldorf, for Appellee.

Argued before HARRELL and EYLER, JJ., and Paul E. ALPERT, Judge (retired), Specially Assigned.

HARRELL, Judge.

This appeal stems from an action brought in the Circuit Court for Anne Arundel County (Cawood, J.) seeking a declaratory judgment. The parties are Randall Campbell Jenkins (Mr. Jenkins or appellant) and Nellie Madeline Jenkins (Mrs. Jenkins or appellee). Mr. Jenkins sought to have the trial court determine the percentage of Mrs. Jenkins's entitlement to his federal pension pursuant to a now disputed stipulation and agreement reached by the parties in their divorce proceedings. The judge was persuaded that Mrs. Jenkins's position was correct. Mr. Jenkins, in his effort to appeal that judgment, has failed to note properly this appeal. We, therefore, dismiss [1] his appeal pursuant to Md. Rule 8–602(a). *See*

---

1. Both parties briefed only the substantive merits of the issues sought by them to be decided on appeal. Prior to the day of oral argument, our clerk's office, at the panel's request, informed the parties that we

*also Biro v. Schombert,* 285 Md. 290, 402 A.2d 71 (1979) (noting this Court's authority to dismiss *nostra sponte* when appellate jurisdiction is lacking).

The relevant portions of Md. Rule 8–602(a)(3) permit the Court, on its own initiative, to "dismiss an appeal [if] the notice of appeal was not filed with the lower court within the time prescribed by [Md.] Rule 8–202...." Md. Rule 8–202 dictates that, absent a post-judgment motion, "the notice of appeal shall be filed *within 30 days after* the entry of the judgment or order from which the appeal is taken." (Emphasis added). Md. Rule 8–202 clearly contemplates that the notice of appeal may be filed only after the entry of judgment.

## *ISSUES*

As noted *supra,* the issues decided by this Court were not initiated by either party on appeal[2]. Instead, we shall address only the following questions:

I. Did the filing of Mr. Jenkins's notice of appeal predate the entry of final judgment, i.e., was the appeal prematurely taken?

II. If Mr. Jenkins's notice of appeal was premature, is his appeal saved by the provisions of Md. Rule 8–602(d)?

III. If Mr. Jenkins's notice of appeal was premature, is his appeal saved by the provisions of Md. Rule 8–602(e)(1)(D)?

## *FACTS*

After a 13 October 1995 trial on the merits, Judge Cawood left the bench without issuing an opinion, ruling, or judgment. The transcript of the judge's comments, at the conclusion of

wished them to address the timeliness of the notice of appeal. Both parties accepted that invitation.

**2.** Appellant sought to have this Court decide whether the trial court erred in holding that the stipulation between the parties entitled the appellee to one-half of the marital portion of appellant's entire pension. Additionally, appellant sought review of the trial judge's decision to allow an interpretive letter written by appellant's attorney into evidence.

the parties' closing arguments, clearly indicates that neither a judgment nor an opinion was rendered in open court. The judge stated:

> I've been going through this language [of the agreement] about eight times while some of this testimony has been going on, *and I'm going to go through it a few more times to determine* exactly what [the parties] meant because as I said its not changing anything. It's simply the [c]ourt determining what they meant.... So *we'll take it under advisement* and try to figure out what I think based on all of the evidence I've heard ... *and then we'll have an opinion on that and declare what it is* ... which formula to apply here, so that's what we'll do.

(Emphasis added).

■ On 24 October 1995, the trial judge issued a written opinion, copies of which were apparently sent to counsel. The final paragraph of his opinion stated that "[c]ounsel shall prepare an appropriate declaratory judgment and, if necessary, an order in the nature of a QDRO [3]." The opinion was entered on the docket on 27 October 1995 with notice that "an appropriate declaratory judgment," prepared by counsel, would follow. On 8 November 1995, Mr. Jenkins filed his "Order for Appeal" that notified the clerk of his intention to "... prosecute an appeal of the Opinion rendered in this case ... on [24 October 1995]...." On 21 November 1995, Judge Cawood corrected, by interlineation, a non-substantive typographical error in his written opinion.

---

**3.** QDRO's or Qualified Domestic Relations Orders are orders of a domestic relations court that come under an exception to the spend-thrift provisions of ERISA (Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461). The ERISA provisions generally prevent the assignment or distribution of the proceeds of an ERISA qualified plan to third parties. A domestic relations order meeting certain qualifications (hence the QDRO moniker) for support or distribution of property may, however, require the allocation of all or part of a plan participant's benefits to an alternate payee. Use of this ERISA exception allows state trial courts effectively to alter title to otherwise untouchable pension plans without violating federal law.

On or about 23 January 1996, the attorney for Mrs. Jenkins mailed to Judge Cawood, with a copy to opposing counsel, a proposed order embodying the requisite declaratory judgment and QDRO aspects. In a cover letter, Mrs. Jenkins's attorney claimed that counsel for Mr. Jenkins, having reviewed the proposed order previously, declined to sign it because of the pending appeal. Mr. Jenkins's attorney apparently did not dispute that the proposed order conformed to the judge's written opinion and the directives contained therein. The judge signed the order on 31 January 1996 and it was docketed on 9 February 1996.

### ANALYSIS

### I.

In his Order for Appeal, Mr. Jenkins informed the clerk that "[t]he Plaintiff, Randall Campbell Jenkins, will prosecute an appeal of the *Opinion* rendered in the case by The Honorable, James C. Cawood, Jr., presiding. The *Opinion* was signed [24 October 1995] (copy attached). Please docket this appeal and transmit the record accordingly to the Court of Special Appeals." (Emphasis added.) Appended to the Order for Appeal was a certificate of service to opposing counsel and a copy of the 24 October 1995 opinion.

■ We do not base our decision upon the language in the Order for Appeal which purports to appeal the opinion of the court. Without regard to the text of the order for appeal, we are required to accept it if timely filed. *Institutional Mgt. Corp. v. Cutler Computer Concepts, Inc.*, 294 Md. 626, 630–31, 451 A.2d 1224 (1982); *Shipp v. Autoville Ltd.* 23 Md.App. 555, 559, 328 A.2d 349 (1974), *cert. denied,* 274 Md. 725 (1975). Mr. Jenkins, however, did not file in a timely manner. Had he filed the same "Order for Appeal" during the proper period, we would be compelled to accept it as conferring appellate jurisdiction, even though it purports to appeal the opinion and not a judgment.

In Maryland, and most other jurisdictions, generally only final judgments are appealable.[4] We conclude that Mr. Jenkins's notice of appeal was filed before a final judgment was entered. Because it was filed before entry of final judgment, we must instead consider the Order for Appeal premature and continue our analysis of its propriety.

The longstanding rule in this State deems the existence of a final judgment as a jurisdictional fact prerequisite to the viability of an appeal. *E.g., Estep v. Georgetown Leather Design,* 320 Md. 277, 283, 577 A.2d 78 (1990) (determining that an order or judgment is not appealable unless it is final); *Institutional Management,* 294 Md. at 629, 451 A.2d 1224; *Eastgate Assocs. v. Apper,* 276 Md. 698, 700, 350 A.2d 661, 663 (1976); *Sheeler v. Handelman,* 212 Md. 152, 129 A.2d 78 (1957); *Wegefarth v. Weissner,* 132 Md. 595, 106 A. 854 (1918); *Phillips v. Pearson,* 27 Md. 242 (1867). The date of entry of a final judgment, under Md. Rule 8–202[5], fixes the post-judgment schedule for the filing of certain documents, including the notice of appeal.

Mr. Jenkins argues that the 24 October 1995 opinion was a final, appealable judgment when it was entered on the docket on 27 October 1995. If this were the case, his notice of appeal would have been timely. Mr. Jenkins contends that the opinion left nothing for the trial court to do and, therefore, was final. The pivotal case on the issue of finality of judg-

---

**4.** There are several exceptions to the general final judgment rule in Maryland. Certain non-final orders are appealable addressing interlocutory appeals, collateral orders, and judgments certified pursuant to Md. Rule 2–602. None of these exceptions are relevant to our analysis in this case.

**5.** This rule, controlling the timeliness of appeals, states in relevant part:
**Rule 8–202. NOTICE OF APPEAL—TIMES FOR FILING**
**(a) Generally.**—Except as otherwise provided in this rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken. . . .
**(f) Date of Entry**—"Entry" as used in this rule occurs on the day when the clerk of the lower court first makes a record in writing of the judgment, notice, or order ... on a docket ... and records the actual date of the entry.

ment, when additional trial court action is expressly contemplated, is *Rohrbeck* v. *Rohrbeck,* 318 Md. 28, 566 A.2d 767 (1989). The Court of Appeals, in *Rohrbeck,* clarified the final judgment requirement and the effect of contemplated trial court actions.

The *Rohrbeck* trial court entered a "Judgment of Absolute Divorce" on 13 June 1988. The judge's order granted the wife a divorce, awarded her custody of the parties' child, and reserved for future determination other issues raised in the pleadings. These additional issues were tried before another judge, who issued an oral decision from the bench on 13 July 1988. Her decision purported to be final except that she anticipated the subsequent issuance of one or more Qualified Domestic Relations Orders [6] (QDRO's or Quadros).

The question raised in *Rohrbeck* was whether the QDRO's were collateral to or an integral part of the primary judgment. The Court concluded that the character of QDRO's depends upon the circumstances in which they prove necessary. In many instances, a QDRO is issued after judgment as an enforcement tool to effectuate the disposition of property under Md. Fam. Law Code Ann. § 8–205. There are other circumstances when the need for a QDRO may not be apparent at the time of final judgment. In such cases, a QDRO is collateral and not necessary to a final judgment.

In the *Rohrbeck* case, however, the judge, throughout her remarks, made it clear that she contemplated the entry of

---

**6.** The *Rohrbeck* Court analyzed the effect of contemplated Qualified Domestic Relations Orders (QDRO's or Quadros) on the finality of the primary judgment. A QDRO can be used either as an enforcement mechanism collateral to the primary judgment or as an integral part of the judgment. This chameleon characteristic of QDRO's provided a suitable vehicle for the Court to distinguish between collateral orders and non-collateral orders and their effect on the finality of judgment.

In the instant case, the intricacies of QDRO's are not relevant. What is important is the notion, clearly expressed in *Rohrbeck,* that when a judge's decision or opinion indicates that a written order is to follow, there can be no final judgment unless the anticipated written order is collateral to the primary judgment.

QDRO's before the judgment would become final. Her opinion stated, in part:

> Madam Clerk, I am going to try and tell you to enter judgment when I get to these because *this is going to be the final judgment in this case with the one exception, and that is to the extent there are quadros [QDRO's], I would like to have the order that you both have agreed to on my desk on Monday so that I can sign the order on the quadros.* All right. I will try to clue you, Madam Clerk, when you need to enter a judgment.

*Rohrbeck,* 318 Md. at 37, 566 A.2d 767 (emphasis in original). The judge followed this statement with an order regarding custody of the child, establishing a visitation schedule, awarding counsel fees, distributing marital property, and determining the parties' alimony and support obligations. During the requisite marital property analysis, the judge determined that certain portions of the husband's property would be subject to QDRO's and that she would "specify what they would be afterward." The parties orally evidenced an understanding that a written order encompassing the decision of the court and proposed QDRO's would be presented for the judge's signature. No written order reflecting the judge's oral pronouncement was ever presented, signed, or docketed.

On 26 August 1988, Mrs. Rohrbeck presented several proposed QDRO's to the judge for approval. The judge, citing a lack of jurisdiction, refused to consider the proposed QDRO's. She determined that final judgment was entered on 13 July 1988 when her oral opinion was entered in the docket. The judge opined that because more than 30 days had passed between her purported 13 July 1988 final judgment and the submission of the proposed QDRO's, under Md. Rule 2–601, the circuit court could not exercise further jurisdiction over the matter. Mrs. Rohrbeck unsuccessfully urged that final judgment had not been entered on 13 July 1988. Her appeal to this Court followed, but the Court of Appeals granted *certiorari* before we could decide it.

■ The Court recognized that QDRO's may be collateral to, or an integral part of, a judgment depending on the circumstances. When a judge specifically contemplates the issuance of a QDRO, before allowing a judgment to be finalized, the QDRO is an integral part of the judgment without which there can be no final judgment. Under the rule set forth in *Rohrbeck,* when the trial judge contemplates any additional non-collateral action before entry of final judgment, there can be no final judgment absent the anticipated action.

■ In order for that moment of final judgment to arrive, the judge's order must 1) be intended as an unqualified and final disposition of the matter in controversy, 2) adjudicate all claims entirely unless certified pursuant to Md. Rule 2–602(b) [7], and 3) the clerk must make a proper record of the judgment. *E.g., Rohrbeck v. Rohrbeck,* 318 Md. at 41, 566 A.2d 767; *Stephenson v. Goins,* 99 Md.App. 220, 636 A.2d 481, *cert. denied,* 335 Md. 229, 643 A.2d 384 (1994); *Figgie Int'l, Inc. v. Tognocchi,* 96 Md.App. 228, 624 A.2d 1285, *cert. denied,* 332 Md. 381, 631 A.2d 451 (1993). The 13 July 1988 *Rohrbeck* order and the trial court's 24 October 1995 opinion in the instant case were both entered on the docket and essentially adjudicated all claims between the parties. Both, however, contemplated further action by the trial court. The *Rohrbeck* order contemplated additional action, i.e. approval of proposed non-collateral QDRO's, before judgment would be final. Similarly, the opinion in the instant matter contemplated court approval of a written judgment and possibly a QDRO. Neither action was the final, unqualified disposition of the matter

---

**7.** This rule allows certain "partial" judgments to be appealed under special circumstances.

**Rule 2–602. JUDGMENTS NOT DISPOSING OF ENTIRE ACTION**

... (b) **When Allowed**—If the [trial] court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to [Md.] Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

in controversy and, therefore, neither could be the final judgment.

■ When a written or oral opinion indicates that a written embodiment of the judgment will follow, the opinion cannot be a final, unqualified disposition. It is not ripe, therefore, for appeal. The question of whether the trial court intended its order or ruling to be "unqualified" has surfaced on numerous occasions. Historically, the Court based its determination on whether there was "any contemplation that a further order [was to] be issued or that anything more [was to] be done". *Rohrbeck,* 318 Md. at 41–42, 566 A.2d 767, (insertions in original) (quoting *Walbert v. Walbert,* 310 Md. 657, 661, 531 A.2d 291, 293 (1987)); *Doehring v. Wagner,* 311 Md. 272, 275, 533 A.2d 1300, 1301–02 (1987). The Court in *Rohrbeck* elucidated the analysis we must follow:

> Lest there be any lingering questions about the matter, we now make clear that, whenever the court, whether in a written opinion or in remarks from the bench, indicates that a written order embodying the decision is to follow, a final judgment does not arise prior to signing and filing of the anticipated order unless (1) the court subsequently decides not to require the order and directs entry of judgment in some other appropriate manner or (2) the order is intended to be collateral to the judgment.

*Rohrbeck,* 318 Md. at 42, 566 A.2d 767. Other jurisdictions are in accord. *See, e.g., Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco, & Firearms,* 812 F.2d 1044 (7th Cir.1987) (holding that litigants cannot appeal from judge's statement that he intends to enter judgment); *Fox v. Fox,* 127 Cal.App.2d 253, 273 P.2d 585 (1954) (deciding no appeal may lie from an opinion or mere memorandum the clear intent of which is to authorize a future written order or judgment); *Stoermer v. Edgar,* 119 Ill.App.3d 514, 75 Ill.Dec. 18, 456 N.E.2d 701 (1983) (dismissing appeal where trial court's memorandum of decision indicated that final decision would follow). *Contra Casino, Inc. v. Kugeares,* 354 So.2d 936 (Fla.Dist.Ct.App.1978) (allowing appeal from judgment that

made all necessary findings but clearly envisioned future final order if that order is actually subsequently rendered and disposes of all disputes between all parties).

Similarly, in *Popham v. State Farm Mut. Ins. Co.*, 333 Md. 136, 143, 634 A.2d 28 (1993), the Court concluded that "when [the trial court] ruled orally, [it] contemplated, and so advised counsel, that it would sign an order, embodying that ruling, to be submitted by . . . counsel. Clearly, the oral ruling was not, and could not be, a final judgment." This is the same rule set forth in *Rohrbeck* and is also the rule that applies in the instant case. The trial judge plainly indicated in his written opinion that a written judgment would follow. Consequently, there can be no final judgment absent either a subsequent determination by the trial judge that the written order was not required or some indication that the prospective written order was collateral to the judgment.

In the case *sub judice*, there was no independent determination that a written order was not required. Additionally, like *Rohrbeck*, the written judgment contemplated at the time of the judge's opinion was not collateral to the judgment. It was, after all, to be the full embodiment of the judge's opinion. It dealt not with collateral issues, but with the entire matter before the court.[8] There could be, therefore, no final judg-

---

8. The opinion issued by the trial judge set forth the basis for his reasoning. It did not, however, dictate the final disposition of the matter. This was the contemplated role of the written judgment that was ultimately filed and which disposed of the entire matter. Additionally, we note that Mr. Jenkins sought declaratory relief. In any declaratory action, no judgment can be final that does not declare the rights of the parties. In the instant case, the judge made no declaration of rights in his 24 October 1995 opinion. His 31 January 1996 order, however, did set forth the rights and responsibilities of the parties. The judge ordered, *inter alia*, that the relief in appellee's Counter–Complaint be granted, the relief requested in appellant's Complaint be denied, the appellee was entitled to a specific portion of appellant's plan benefits, the plan administrator was required to disburse monies under the plan to appellee, and the trial court retained continuing jurisdiction over the matter in order to ensure that the order continued to meet the requirements of a QDRO. Certainly, a judgment encompassing these issues cannot be deemed collateral.

ment until the written judgment, contemplated by the 24 October 1995 opinion, was signed and filed.

██ Our decision is consistent with the doctrine that there can be no appeal from the opinion of a trial court not embodied in a final judgment. *E.g., Popham,* 333 Md. at 144, 634 A.2d 28; *Gluckstern v. Sutton,* 319 Md. 634, 650, 574 A.2d 898, *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990); *Billman v. Maryland Deposit Ins. Fund,* 312 Md. 128, 132, 538 A.2d 1172 (1988); *Doehring,* 311 Md. at 274, 533 A.2d 1300. An appeal must be from a judgment and not the opinion of the circuit court. *Fast Bearing Co. v. Precision Dev. Co.,* 185 Md. 288, 44 A.2d 735 (1945); *Southcoast Builders, Inc. v. Potter Heating & Elec., Inc.,* 94 Md.App. 160, 166 n. 5, 616 A.2d 441 (1992). Ordinarily, an opinion is not considered a part of the judgment. The 24 October 1995 opinion was not a judgment and could not, therefore, be the subject of an appeal.

Similarly, our decision in the instant case is consistent with *Waller v. Maryland Nat'l Bank,* 332 Md. 375, 377–80, 631 A.2d 447 (1993) (*per curiam*). In *Waller,* the Court reasoned that the trial judge's intent as to the finality of the judgment controls. Without a proper docket entry, however, the judgment cannot become final. The *Waller* trial judge entered a judgment disposing of all issues before the court. His action was intended to be the final, unqualified disposition of the matter. The clerk, however, mistakenly indicated on the docket that the judgment was not final and that a written order would follow. The judgment could not, therefore, become final until the clerk corrected the docket entry.

*Waller* offers no relief to appellant [9]. In the instant case, it was not the clerk's mistake, but the trial judge's reservation of final judgment until a later time, that prevented the 24 October 1995 opinion from becoming a final judgment. Al-

---

9. Appellant also asserted that footnote 2 in *Waller* authorized this Court's jurisdiction in the instant case under Md. Rule 8–602(d). As we shall discuss *infra,* neither the *Waller* footnote nor the text of the Rule save appellant's appeal from dismissal.

though the *Waller* trial court intended the matter to be completely resolved, the trial courts in both *Rohrbeck* and the instant case, as clearly evidenced by their opinions, harbored no final intent.

Most recently, the Court of Appeals visited the final judgment rule in *Board of Liquor License Comm'rs v. Fells Point Cafe, Inc.*, 344 Md. 120, 685 A.2d 772 (1996). In that case, the parties disputed the timely filing of a notice of appeal because the trial judge issued a written memorandum and order after an appeal was noted from a prior order. This case further illustrates the final judgment requirements and supports our determination that the 24 October 1995 opinion, in the instant case, was not a final, appealable judgment.

In *Fells Point Cafe*, liquor licensees sought judicial review and obtained a stay of the Baltimore City Board of Liquor License Commissioner's decision to limit the hours of operation of activities in their establishment. A hearing was held on 15 May 1995 during which the judge stated that "the decision of the ... Commissioners is hereby reversed...." The judge asked counsel to prepare an order to that effect. This order was prepared and was signed on 17 May 1995. The order stated that the decision of the Board was "REVERSED for the reasons articulated by the Court in its oral ruling from the bench and in the Court's Memorandum Opinion attached hereto". No memorandum opinion, however, was attached. The order was docketed that same day. The entry read "ORDER OF COURT THAT THE DECISION OF THE BOARD IS REVERSED; COSTS TO BE PAID BY RESPONDENTS...." Within 10 days of that docket entry, the Board and other interested parties filed motions to reconsider. The judge held a motions hearing on 16 June 1995, the same day the Board filed its notice of appeal. On 19 July 1995, the Judge filed a Memorandum Decision and Order that restated his conclusions and implicitly disposed of the outstanding motions to reconsider.

The licensees argued that the appeal should be dismissed because the judge's 19 July Memorandum Decision and Order constituted the final judgment. Therefore, they asserted the 16 June notice of appeal was premature. As previously shown, in order for a final judgment to exist the court must intend its action to be the final, unqualified disposition of the matter, it must adjudicate all claims against all parties, and the clerk must make a proper record. *Rohrbeck*, 318 Md. at 41, 566 A.2d 767. In *Fells Point Cafe*, the question was whether the judge's 17 May 1995 Order could have been final considering his subsequent issuance of a memorandum decision and order. The Licensees argued that because Md. Ann.Code art. 2B, § 16–101(e)(4)(i) ("If the court reverses the action of the local licensing board it shall file with the papers a written statement of the reasons") requires a supporting written statement, the Judge's action could not become final until such statement was issued and docketed. They assert that the judge's Memorandum Decision and Order served as the statutorily mandated written statement.

The Court determined that, under the particular facts and circumstances of that case, the judge's initial order from the bench and the written order docketed two days later were intended to serve as the final, unqualified disposition of the matter. The Court cited numerous instances from the record where the trial court indicated that it had fully adjudicated the issues submitted for its determination by no later than 17 May. *Fells Point Cafe*, 344 Md. at 129, 685 A.2d 772. Additionally, the Court concluded that the judge's comments on the record on 15 May satisfied the statutory written statement requirement. *Id.* at 131, 685 A.2d 772; *Smith v. State*, 306 Md. 1, 11, 506 A.2d 1165, 1170 (1986); *Thomas v. State*, 99 Md.App. 47, 635 A.2d 71, *cert. denied*, 334 Md. 632, 640 A.2d 1133 (1994).

The Court further determined that the written statement was not required for finality of the judgment. Essentially, the judge's intent that the order be final controls under the rule set forth in *Rohrbeck*. The judge's comments on the record and the clerk's 17 May 1995 docket entry are evidence of this

final intent. The Court concluded that the 17 May 1995 order was intended to be final, disposed of all issues before the court, was properly entered on the docket, and was, therefore, a final judgment.[10]

In the instant case, on the other hand, the trial judge's 24 October 1995 opinion lacked the intended finality of the 17 May 1995 *Fells Point Cafe* order. We conclude that there was no final judgment until the 31 January 1996 written judgement, contemplated by the 24 October 1995 opinion, was filed on 9 February 1996. Therefore, Mr. Jenkins's Order for Appeal, filed on 8 November 1995 and before final judgment, was premature.

Premature notices of appeal are generally of no force and effect. *Makovi v. Sherwin–Williams Co.*, 311 Md. 278, 283, 533 A.2d 1303 (1987); *accord Plains & Prairie Implement v. AG–Management & Associates*, 243 Mont. 235, 794 P.2d 332 (1990); *Rust v. Clark County Sch. Dist.*, 103 Nev. 686, 747 P.2d 1380 (1987); *Evans v. Wilson*, 776 S.W.2d 939 (Tenn.1989); *contra LaShay v. Department of Social & Rehabilitation Services*, 160 Vt. 60, 625 A.2d 224 (1993) (holding that premature appeals are effective under a scheme of appellate rules very similar to Fed.R.App.P. 4 and different from Maryland's rules). They have no effect because premature appeals are a jurisdictional defect. *Sapero & Sapero v. Bel Air Plumbing & Heating Contractors*, 41 Md.App. 251, 261, 396 A.2d 317 (1979). We may not confer appellate jurisdiction on our own initiative.

We acknowledge that dismissing this appeal is a harsh measure and essentially leaves Mr. Jenkins without an avenue of redress for the trial court's alleged error. The

---

10. The effect of a notice of appeal filed prior to the withdrawal or disposition of Md. Rule 2–532, 2–533, or 2–534 motion timely filed by the appealing party was addressed in *Edsall v. Anne Arundel County*, 332 Md. 502, 632 A.2d 763 (1993); *see also, Board of Liquor License Comm'rs v. Fells Point Cafe, Inc.*, 344 Md. 120, 685 A.2d 772 (1996). The effect of such a motion filed by the non-appealing party on the validity of the notice of appeal remains uncertain.

results, however seemingly inequitable, are necessary (perhaps quixotically) to promote the judicial system's interest in finality of judgment and confidence in the judicial disposition of disputes. The policy underlying the final judgment doctrine is compelling. It is, therefore, strictly enforced.

> The final judgment doctrine is based on the theory that piecemeal appeals are oppressive and costly, and that optimal appellate review is achieved by allowing appeals only after the entire action is resolved in the trial court. The underlying purposes of requiring a final judgment for appealability is to avoid constant disruption of the trial process, to prevent appellate courts from considering issues that may be addressed later in trial and to promote efficiency.... The requirement of finality is thus not a mere technicality, but is an important factor in maintaining a smoothly functioning judicial system.

4 Am.Jur.2d, *Appellate Review* § 86 (1995 & Supp.1996). We concede that strict compliance with the doctrine may result in unfair results in individual cases. We must endeavor, however, to preserve the integrity of the judicial system by maintaining the finality of judgments for the aggregate of cases.

## II.

The trend, in Maryland and nationally, is to remove the technical hurdles that sometimes frustrate access to courts. One such hurdle is created by strict application of the final judgment rule. Some states have relaxed the rule's strict application. For example, some courts have held that a document, although not technically conforming to the final judgment requirement, may nevertheless justify an appeal when the litigants considered the document to be a final judgment and they took action consistent with their common misconception. *Windham Community Memorial Hosp. v. City of Willimantic*, 166 Conn. 113, 348 A.2d 651 (1974); *Burton v. Mellor*, 159 Kan. 262, 154 P.2d 108 (1945). At least one jurisdiction has found that appellee's failure to move for dismissal waived the prematurity defect. *Windham, supra.*

We can see no compelling reason for adopting a similar rule. Such a holding would contravene the clear language of Md. Rule 8–602(a) specifically authorizing appellate courts to move for dismissal on their own motion. Additionally, allowing the parties to bind the appellate courts to review a matter essentially permits the litigants to confer appellate jurisdiction by agreement. This would directly contradict prior holdings forbidding conferral of appellate jurisdiction by consent of the parties. *Lewis v. Lewis,* 290 Md. 175, 179, 428 A.2d 454 (1981).

Many states, including Maryland, have promulgated exceptions legitimating premature appeals in limited circumstances. In many jurisdictions, when an appellate court is authorized to correct the defect of prematurity, the only period covered by the exception is between the announcement of the appealable judgment and its entry on the docket. The period before the announcement of the appealable judgment is not generally afforded protection. *See, e.g., Bank of Honolulu v. Davids,* 6 Haw.App. 25, 709 P.2d 613 (1985); *Roth v. Roth,* 65 Ohio App.3d 768, 585 N.E.2d 482 (1989); *Fernald v. Maine State Parole Bd.,* 447 A.2d 1236 (Me.1982); *United States v. F & M Schaefer Brewing Co.,* 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958); *Production Maintenance Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp.,* 954 F.2d 1397 (7th Cir.1992).

Md. Rule 8–602 contains two limited saving provisions for otherwise premature appeals. These provisions allow the Court to treat those appeals as if filed in a timely manner. Initially, it is important to note that the saving provisions do not alter the final judgment rule or the requirement of a timely notice of appeal. Instead, the exceptions address prematurity by altering artificially the date of filing of the notice of appeal. The exceptions allow the Court, through application of a legal fiction, to treat the notices as if timely filed after a final judgment. This manipulation of the filing dates achieves the desired equitable result without altering the traditional final judgment and timeliness requirements. The

exceptions do not relieve the litigants of the final judgment requirement nor the requirement of a timely notice of appeal. Appreciation of this is crucial to our analysis because, if the exceptions do not apply, the final judgment rule and the requirement of a timely notice of appeal continue to dictate dismissal of a premature appeal.

 The first saving provision allows that:

A notice of appeal from a ruling, decision, or order *that would be appealable upon its entry on the docket, filed after* the announcement of the ruling, decision, or order by the trial court but before entry of the ruling, decision, or order on the docket, shall be treated as filed on the same day as, but after, the entry on the docket.

Md. Rule 8–602(d) (emphasis added). We conclude that the clear and unambiguous meaning of this provision does not offer aid to Mr. Jenkins. We additionally conclude that the purpose behind the saving provision of Md. Rule 8–602(d) does not support Mr. Jenkins and his cause.

A plain reading of Md. Rule 8–602(d) demonstrates that the only period embraced by this Rule in the instant case was between the signing of the judgment, on 31 January 1996, and the entry on the docket, on 9 February 1996. The Rule applies only to a notice of appeal filed "after an order that would be appealable" but before the order is placed on the docket. It contemplates an appealable order, and not a mere announcement of the intended order to be released later.[11]

---

11. The California Supreme Court decided the effect of a rule of procedure similar, but still fundamentally different, to Md. Rule 8–602(d) in *Evola v. Wendt Const. Co.,* 158 Cal.App.2d 658, 323 P.2d 158 (1958), In that case, the notice of appeal, like Mr. Jenkins's, stemmed from a non-appealable order. Prior to 1951, there was no question that the appeal would have been dismissed in California. In 1951, however, a new provision was added to the California rules that read:

A notice of appeal filed prior to rendition of the judgment, but after the judge has *announced his intended ruling,* may, in the discretion of the reviewing court for good cause, be treated as filed immediately after entry of the judgment.
(Emphasis added).

Because the trial court's opinion in the instant case anticipated a future written judgment, it was not, and could never be, appealable. The only appealable judgment issued in this matter was the 31 January 1996 written manifestation of the judge's decision. Any notice of appeal filed before 31 January 1996 cannot benefit from the clear and unambiguous scope of Md. Rule 8–602(d). Mr. Jenkins's Notice of Appeal predated the 31 January 1996 judgment by several months.

■■■ The canons and rules of construction that guide the interpretation of statutes apply equally when interpreting rules of procedure. *E.g., Long v. State,* 343 Md. 662, 684 A.2d 445 (1996); *Pollard v. State,* 339 Md. 233, 239, 661 A.2d 734 (1995); *State v. Montgomery,* 334 Md. 20, 24, 637 A.2d 1193 (1994); *New Jersey ex rel. Lennon v. Strazzella,* 331 Md. 270, 274, 277, 627 A.2d 1055 (1993); *Hartless v. State,* 327 Md. 558, 563, 611 A.2d 581 (1992). If the words of the rules are clear and unambiguous, our search for the meaning of the saving provisions may begin and end with their plain meaning. *Long,* 343 Md. at 668, 684 A.2d 445, 448 (citing *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012 (1994)); *Montgomery,* 334 Md. at 24, 637 A.2d 1193; *Harris v. State,* 331 Md. 137, 145, 626 A.2d 946 (1993); *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481 (1991). When language is plain and unambiguous, and expresses a definite meaning consonant with the rule's purpose, courts must not insert or delete words to make it express an intention different from its clear meaning. *In re Adoption/Guardianship No. A91–71A,* 334 Md. 538, 640 A.2d 1085 (1994); *Department of State Planning v. Mayor and Council of Hagerstown,* 288 Md. 9, 15, 415 A.2d 296 (1980).

_____

The Court interpreted that rule as allowing an appellant, in the same predicament as Mr. Jenkins, to survive a motion to dismiss. Had our Rule similarly commenced the protected time period at the announcement of the judge's intent to issue judgment, Mr. Jenkins might be saved. Md. Rule 8–602(d), however, is unlike the California rule. Our rule clearly states that only announcement of an order that would be appealable starts the protected time period. Our rules do not allow appeals from a judge's announcement of his or her intention to rule on a case.

Although the plain meaning of Md. Rule 8–602(d) does not encompass Mr. Jenkins's appeal, we, out of an abundance of caution, examine also the intent of the Court of Appeals in promulgating the Rule. In doing so, we seek to determine if the Court's intent coincides with the Rule's plain meaning. The cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the promulgating body. *See, e.g., Coburn v. Coburn,* 342 Md. 244, 256, 674 A.2d 951 (1996); *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995); *In re Roger S.,* 338 Md. 385, 390, 658 A.2d 696 (1995). When attempting to discern the reasonable intendment of the language used in a rule, we look to its history. We must also consider the entire rule in our interpretation in tune with logic and common sense. *Long, supra.*

Md. Rule 8–602(d), in its relevant form, was adopted by the Court of Appeals on 19 November 1987. We examined the minutes of the Court of Appeals Standing Committee on Rules of Practice and Procedure (Rules Committee), recordings of the Court of Appeals's hearings on the proposed Rule, and certain communications between the two bodies. *See* Minutes of the Court of Appeals of Maryland Standing Committee on Rules of Practice and Procedure Meetings (17 January 1986) (on file with Rules Committee) (hereinafter "Minutes"); Tape of Court of Appeals Conference on Proposed Appellate Rules of Practice and Procedure (13 May, 27 October, 6 and 19 November 1987) (on file with Clerk of the Court of Appeals) (hereinafter "Tapes").

The first incarnation of Md. Rule 8–602(d), initially identified as Md. Rule 8–167(d)(1) and later renumbered as Md. Rule 8–602(d)(1), read:

(d) Premature Appeal

(1) Judgment Entered After Notice Filed

If the appellate court determines that the judgment of the lower court was entered after the notice of appeal was filed, the notice of appeal shall be treated as if filed on the date of entry of the judgment.

The proposed rule was accompanied by an explanatory note indicating that it was new. Additionally, during a meeting of the Rules Committee, the Reporter's notes indicated section (d) had been intended to cover instances in which "everyone believed there was a final judgment". Minutes. The Rules Committee Chair pointed out at a hearing that the focus of the Committee in drafting the Rule was the situation in which the court, although rendering a judgment meant to be final, simply had not entered it as of the time the notice of appeal was filed. Summary of Open Meeting Held By the Court of Appeals; Appellate Rules—Title 8 (13 May 1987) (on file with the clerk of the Court of Appeals). The Rule, as then proposed, purported to save any notice of appeal filed before the final judgment. The provision's vast scope troubled the Court of Appeals. Judge Eldridge, at the Court's 27 October 1987 hearing, expressed concern that the Rule would entice lawyers to begin "plunking down notices of appeal right and left." Tape (27 October 1987). The judges acknowledged that a flood of interlocutory notices of appeal could follow. They conjectured that lawyers might be compelled under the Rule to file a notice of appeal immediately after filing a complaint in order to protect their client. The Rule, as proposed, seemingly would have saved any premature appeal, including one defensively filed immediately after the complaint. Additionally, the judges were concerned that the proposed Rule would allow a notice of appeal from any decision or court action to serve as a notice of appeal for an entirely different subsequent court action in the same case. The Court of Appeals agreed that the language of the proposed Rule went too far. From the beginning of its discussion of the Rule, the Court struggled to generate acceptable language. Their clear intent was not to save all premature appeals. The judges contemplated that some appeals would be too early and, therefore, appropriately dismissed.

The Court of Appeals continued to divine the appropriate wording of the Rule. At the 27 October 1987 meeting the term "colorable judgment" was first suggested. Tape (27 October 1987). The term was offered to define those court

actions that could be appealed under the Rule. The Court attempted to use "colorable" to distinguish between ordinary court rulings and those deemed worthy of being appealed for the purposes of a saving clause. The judges also discussed excluding coverage of the Md. Rule 2–602 problem, i.e. the multiple parties, multiple claims problem, from Md. Rule 8–602(d).

On 3 November 1987, the language of the proposed rule was narrowed toward its current form. On that date, the Rules Committee's Reporter sent the Court of Appeals several revisions of the proposed appellate rules that included a change to the wording and numbering of proposed Md. Rule 8–602(d). Letter from Una M. Perez, Esquire, Reporter, Standing Committee on Rules of Practice and Procedure, to Court of Appeals of Maryland (3 November 1987) (on file with the Rules Committee) (hereinafter "Reporter's Letter"). The proposed language of the rule change read:

(d) Judgment Entered After Notice Filed

A notice of appeal filed after the announcement or issuance of a decision or order, but before the entry of a judgment in accordance with Rule 2–601, shall be treated as filed on the same day as, but after, the entry of judgment.

The new proposal did not include the descriptive modifier "colorable", but did limit the Rule's applicability to Rule 2–601 judgments, thereby excluding the Rule 2–602 problem.

Had this proposal survived, Mr. Jenkins may have had a viable appeal in the instant case. From a plain reading of the proposed Rule, it required only that the notice of appeal be filed after the announcement of a decision or order. It could be argued, in the instant case, that the judge's 24 October 1995 opinion served as an announcement of his "decision". Under such a rule, Mr. Jenkins's 3 November 1995 Order for Appeal might have been properly treated as if filed after the entry of the ultimate judgment.

If there was any question as to how the Rules Committee intended this proposal to be applied, it would seem to have been answered by the Reporter's admission that the language

of the proposed Rule was taken essentially from Fed.R.App.P. 4(a)(2) (hereinafter referred to as "Rule 4(a)(2)"). Reporter's Letter. The federal courts have generally taken a liberal approach to interpreting Rule 4(a)(2). *See, e.g., Production Credit Ass'n v. Alamo Ranch Co.,* 989 F.2d 413 (10th Cir. 1993). A United States Supreme Court decision, released after the Rules Committee flirted with the idea of incorporating the language of Rule 4(a)(2), offers some guidance as to how that provision would be interpreted in circumstances similar to those presented to us by Mr. Jenkins. In *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.,* 498 U.S. 269, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991), the Court held that Rule 4(a)(2) saves a notice of appeal from a non-final decision followed by a final judgment. The "bench ruling" in *FirsTier* purported to dispose of all claims and would have been final had the trial judge set forth judgment [12] immediately following his opinion and the clerk had entered the judgment on the docket. If Md. Rule 8–602(d) had been adopted with the Rule 4(a)(2) language, Mr. Jenkins, at least arguably, could have appealed from the opinion because it disposed of all claims and would have been final but for the judge's lack of final intent, the possible need for a QDRO, and the clerk's failure to finalize the judgment in the docket.

On 6 November 1987, the Court again met to discuss the Rule. Judge Rodowsky argued that the Rule as then proposed was too narrow. He, and at least one other member of the Court, advocated the "colorable appealability" language that would save more appeals. On 9 November 1987, the Rules Committee Reporter sent the Committee chair a draft of the Rule that was amended to conform with the most recent apparent consensus of the Court. Letter from Una M. Perez,

---

**12.** It is important to note that, under Fed.R.Civ.P. 58, a separate written final judgment is required. This additional procedural step further delineates the moment when a judgment becomes final. While based upon a system decidedly different from our procedural scheme, the decision in *FirsTier* still provides some guidance as to how Md. Rule 8–602(d) would have operated had it been adopted with the Fed. R.App.P. 4(a)(2) language included.

Esquire, Reporter, Standing Committee on Rules of Practice and Procedure, to the Honorable Alan M. Wilner, Chairman, Standing Committee on Rules of Practice and Procedure (9 November 1987) (on file with the Rules Committee). In this letter, Ms. Perez indicated that the words "decision or order" were deleted from Md. Rule 8–602 and replaced with "ruling of colorable appealability", the word "appealable" was inserted before "judgment" and "in accordance with Rule 2–601" was deleted. The proposed rule then read:

(d) Judgment Entered after Notice Filed

A notice of appeal filed after the announcement or issuance of a ruling of colorable appealability, but before the entry of an appealable judgment, shall be treated as filed on the same day as, but after, the entry of the judgment.

Ultimately, this wording was replaced in favor of more concrete language. This was done mindful of the practical requirement that parties be able to ascertain the moment when the appeal period begins to run. "Colorable" was susceptible to varying interpretations and this left the Rules Committee chair, and much of the Court, dissatisfied.

It was not until 16 November 1987, a mere three days before adoption, that Md. Rule 8–602(d) congealed into its current form. In a letter to the Court of Appeals, the Rules Committee Chair submitted three final amendments [13] to the proposed appellate rules. Letter from the Honorable Alan M. Wilner, Chair, Standing Committee on Rules of Practice and Procedure, to Court of Appeals of Maryland (16 November 1987) (on file with the Rules Committee) (hereinafter "Chair's Letter"). Each of the changes apparently emanated from policy decisions made by the Court of Appeals at its meetings. The letter proposed essentially the same language ultimately adopted. In his letter, after setting forth the newly proposed language of Md. Rule 8–602(d), the chair penned the following:

---

**13.** Of the three final amendments, two dealt with the saving provisions of Md. Rule 8–602. The other was not relevant to our analysis in the instant case.

> This has been the most difficult one rule to draft, as it must embody three wholly different concepts: (1) the action sought to be appealed must have the quality of a final judgment or an appealable interlocutory order; (2) the appeal must relate to that action; and (3) the only defect must be in the timing of the notice of appeal, i.e., it must be filed *after* announcement of the decision by the court but before the appropriate docket entry is made. The Rule must cover those elements but not extend beyond them.

(Emphasis in original.)

The Committee chair revealed three important points in his letter to the Court. First, the action appealed must have all of the qualities of a final judgment with the only defect being the timing of the notice of appeal. He further stated that the only period protected is between the announcement of the decision having the qualities of a final judgment and the appropriate docket entry. The Rule allows appeals only from a judgment that "would be appealable upon its entry on the docket" but lacks the requisite docket entry. The court action appealed from in the instant case could not have become final by a mere docket entry.

 The Court of Appeals adopted the Rule as proposed on 19 November 1987. In a meeting on that date, Judge Eldridge acknowledged that the Rule was now much more narrow in scope than first intended. Tape (19 November 1987). He indicated that the only technical defect saved by the Rule is a notice of appeal filed before the docket entry but after an order that would otherwise be final. Judge Eldridge and the Court agreed to the more limited language in lieu of the more expansive "colorable appealability" option. Perhaps more important, the Court agreed that the issue was so complex that it should address only the most common premature appeals and could not save all appeals. The judges went so far as to keep the matter open for discussion for further revision of the Rule. No revision or expansion was ever adopted subsequently. The language originally adopted was intended to be narrow and, thus, should be strictly construed.

As the Rules Committee chair stated, "the Rule must cover those elements and not extend beyond them." Chair's Letter. Therefore, it is important, and is consistent with the plain meaning of the Rule, to limit strictly the periods covered by this saving provision. Because a strict interpretation of the text of the Rule coincides with its intended application, we decline the invitation to read the Rule so liberally as to save Mr. Jenkins's appeal.

At oral argument, Mr. Jenkins attempted to further support applicability of Md. Rule 8–602(d) to his appeal by referring to *Waller*, 332 Md. at 380 n. 2, 631 A.2d 447 and *Woodfin Equities Corp. v. Harford Mut. Ins. Co.*, 110 Md.App. 616, 678 A.2d 116 (1996). Mr. Jenkins argues that these cases apply and interpret Md. Rule 8–602(d). In this regard he is correct. Regrettably, at least from Mr. Jenkins's perspective, he gains no relief from the holding of either case.

In *Waller*, a final judgment was not entered because the clerk made an incorrect and unauthorized docket entry. Although the judge expressly intended his order to be a final judgment, the clerk recorded it on the docket as a motion for summary judgment with "order to be filed". Because the clerk's docket entry was conditional, the judgment itself was not final. The Court of Appeals remanded the case for the trial court to enter an order altering the docket to finalize the judgment. Upon filing the corrective order, the clerk would make a correct docket entry, the judgment would become final, and the parties could proceed again with the appeal.

In a footnote, cited by Mr. Jenkins, the Court noted:

Had a confirmatory order been filed by the trial court after its oral ruling, and after the appeal had been noted, the appeal could have been saved by the use of Maryland Rule 8–602(d). That was not the case here, however, and thus the record must be sent back to the trial court for correction.

*Waller*, 332 Md. at 380 n. 2, 631 A.2d 447. Mr. Jenkins contends that, in this footnote, the Court of Appeals implicitly authorized application of Md. Rule 8–602(d) to solve his predicament. Mr. Jenkins's argument is flawed. In *Waller*, the trial judge issued an oral opinion that he considered final.

This was followed by the faulty docket entry and a premature filing of a notice of appeal. The Court hypothesized [14] in its footnote that, had the trial court filed an order confirming its oral ruling, the appeal could have been saved through implementation of Md. Rule 8–602(d). The Rule would apply because the Notice of Appeal came after the announcement of an order, i.e. the original oral order, that would have been final had it been properly noted on the docket. In the present case, however, the judge's 24 October 1995 opinion was not contemplated as final and, therefore, could not be final despite the form of docket entry. The sequence of events in both cases, and their relevance to our disposition under Md. Rule 8–602(d), is perhaps best demonstrated by the following comparative illustrations demonstrating the sequence of events.

Event Sequence in Instant Case

1. Written opinion filed; expressly not considered final by trial judge.

2. Opinion correctly docketed as not final.

3. Notice of appeal filed.

4. Written judgment considered final by trial judge and contemplated in Opinion filed. **This is judgment that would be appealable upon its entry on the docket.** < = = = Saving period covered by Rule 8–602(d)

5. Judgment correctly docketed as final. < = = =

Event Sequence in *Waller* n. 2 Hypothetical

1. Oral judgment expressly considered final by trial judge announced. **This is judgment that would be appealable upon proper entry on the docket.** < = = = 

2. Judgment incorrectly docketed as not final. Saving Period covered by Rule 8–602(d)

---

**14.** The Court, in what evidently was an attempt to clarify its *per curiam* opinion, explained what its ruling might have been under hypothetical circumstances. Providing answers to questions not necessary to the disposition of the appeal often clarifies the court's reasoning but can lead to arguments, such as the one advanced by Mr. Jenkins. The Court's footnote is dicta. In our own effort to provide clarity, we shall still endeavor to explain our understanding of the *Waller* footnote.

3. Notice of appeal filed.

4. Hypothetical Confirmatory Order filed
 as contemplated by prior incorrect docket
 entry. This order would compel the clerk
 to make a docket entry consistent with the
 judge's final intent.

5. Correct final docket entry made. < = = =

Only a Notice of Appeal filed between a judgment the trial judge considers final and its correct entry on the docket is saved by Md. Rule 8–602(d). In *Waller*, footnote two, the hypothetical confirmatory order would have caused the clerk to make a docket entry correctly indicating that the judgment was final. The initial oral judgment would have served as the "judgment that would be appealable upon its entry on the docket" required by Md. Rule 8–602(d). The confirmatory order, once entered on the docket, provided the requisite correct docket entry. The confirmatory order would not serve as the order appealed from. *See Davis v. Davis*, 335 Md. 699, 646 A.2d 365 (1994) (holding that the issuance of a formal written order does not preclude a finding that the judgment was actually orally rendered on an earlier date).

We note that in *Waller* a confirmatory order was not contemplated in the original oral judgment. Had it been, the original oral judgment could not have been considered final by the trial judge and the Court would have been faced with facts similar to the instant case. The judge's oral decision, however, was the final, unqualified disposition of the matter. His ruling lacked facial finality only because of an improper docket entry. Once the proper entry is provided, resulting from the hypothetical confirmatory order, the judge's original oral decision would become a final judgment. Because the *Waller* notice of appeal would have been filed between the original oral order and the hypothetically correct docket entry, the appeal would have been saved by Md. Rule 8–602(d).

In a similar fashion, we deemed the appeal in *Woodfin Equities Corp. v. Harford Mut. Ins. Co.*, 110 Md.App. 616,

630, 678 A.2d 116 (1996), timely. In *Woodfin*, this Court employed Md. Rule 8–602(d) to save an otherwise premature appeal. In that case, the trial judge issued a bench ruling granting appellee's motion for judgment. Appellant filed his notice of appeal after the clerk's entry of the ruling on the docket. The docket entry read "Court finds in favor of [appellee] against [appellant]. . . . Order to be submitted". Because, the docket entry contemplated further action, the judge's ruling could not become final without a correct docket entry or the filing of the written order. Appellant filed his notice of appeal after the contingent docket entry. Later, the trial judge filed a final written order.

Using the same schematic approach used previously to illustrate how Rule 8–602(d) applied to the pertinent facts in the *Waller*, footnote two, hypothetical and the instant case, *Woodfin* reveals:

Sequence of Events in *Woodfin*

1. Oral grant of Motion for Judgment < = = = <br>from the bench. **(We presume that the** <br>**trial court intended this to be the** <br>**final judgment).**

2. Docket entry made indicating written Saving <br>order to be submitted. period <br> covered by

3. Notice of appeal filed. Rule 8–<br> 602(d)

4. Formal written order filed.

5. Docket entry made for formal <br>written judgment indicating that <br>judgment was final. < = = =

Our opinion in *Woodfin*, however, refers to and applies the *Waller*, footnote two, hypothetical as controlling. In that regard, we surmise that this Court determined that the trial judge's grant for the motion of judgment was intended to be final. The later issuance of a formal written opinion would not have precluded such a finding. *See Davis, supra. Woodfin*, we conclude, was a real manifestation of the hypothetical presented in *Waller*. The formal written order, not contemplated by the trial judge's oral decision, served the same

purpose as the hypothetical confirmatory order in the *Waller* footnote. The judge's bench ruling became final when the correct docket entry was made pursuant to the written formal order. The notice of appeal, filed in the interim, was saved by Md. Rule 8–602(d).

Mr. Jenkins's notice of appeal is not similarly situated. As previously discussed, the 24 October 1995 opinion contemplated a written judgment proposed by the parties and signed by the trial judge. The trial judge's 24 October 1995 opinion differs, in that regard, from the *Waller* trial judge's original oral decision and the bench ruling in *Woodfin*. The opinion in the instant case, therefore, could not become an order that would become "appealable upon its entry on the docket" because it was never intended as the final, unqualified disposition of the matter before the trial court. Only the 31 January 1996 judgment could become a final judgment. It did so on 9 February 1996 when it was correctly docketed by the clerk. Mr. Jenkins, therefore, had to file his notice of appeal between the announcement of this judgment on 31 January 1996 and 9 February 1996 in order to benefit from Md. Rule 8–602(d). Simply put, in order to benefit from Md. Rule 8–602(d), a notice of appeal must be filed between the announcement of a decision, order, or ruling intended to be the final, unqualified disposition of the case and a docket entry correctly indicating that final judgment has been entered.

### III.

In a manner similar to Md. Rule 8–602(d), premature notices of appeal filed before entry of final judgment are sometimes rescued by Md. Rule 8–602(e)(1)(D). The rule provides:

> If the appellate court determines that *the order from which the appeal is taken was not a final judgment when the notice of appeal was filed* but that the lower court had discretion to direct the *entry of a final judgment pursuant to [Md.] Rule 2–602(b)*, the appellate court may, as it finds appropriate, . . ., (D) if a final judgment was entered by the lower court after the notice of appeal was filed, treat the

notice of appeal as if filed on the same day as, but after, the entry of the judgment.

Md. Rule 8–602(e)(1)(D) (emphasis added).

As was the case with Md. Rule 8–602(d), we must first look to the plain meaning of the language of Md. Rule 8–602(e)(1)(D). We conclude that the meaning of the Rule is clear and unambiguous. We shall further conclude that the plain meaning of the Rule's text is consistent with its authors' intent.

The plain meaning of the language of the Rule excludes its applicability to Mr. Jenkins. At no time did the trial court have discretion to enter a final judgment pursuant to Md. Rule 2–602(b) [15]. A prerequisite for the entry of a such a judgment is an order that, absent the existence of multiple parties or multiple claims, would be final in the traditional sense. *Planning Bd. v. Mortimer*, 310 Md. 639, 651, 530 A.2d 1237 (1987). No order meeting this prerequisite was present in this case. The matter before the trial court concerned one issue between one plaintiff and one defendant. Therefore, it was inappropriate for disposition under Md. Rule 2–602(b) under any circumstance and we may not exercise the discretion afforded this Court by the Rule.

In anticipation of the suggestion that we should forgo the plain meaning of Md. Rule 8–602(e)(1)(D), we have analyzed the history of how and why the Rule was adopted. Subsection (D) was first proposed in the 16 November 1987 letter from the Rules Committee Chair to the Court of Appeals sent three days before Md. Rule 8–602 was adopted. In his letter, the Chair stated that the additional language, i.e. subsection (D), was intended to cover the problem of a notice of appeal being both too early and too late. Chair's Letter. This is exactly the predicament facing Mr. Jenkins. His Order for Appeal was filed too early and it is now too late to file a proper notice of appeal from the 31 January 1996 final judgment.

---

**15.** *See* note 7 *supra.*

The hurdle Mr. Jenkins cannot clear is the purpose underlying the entirety of Md. Rule 8–602(e). As noted with regard to our analysis of Md. Rule 8–602(d), when determining legislative intent and purpose, we must read the language of the statute in context and in relation to *all of its provisions.* Additionally, we may consider the statute's legislative history and administrative interpretations. *See Howard, supra.* The entirety of subsection (e), as the history of its adoption indicates, only addresses the Md. Rule 2–602 problem and, therefore, none of its provisions, including Md. Rule 8–602(e)(1)(D), should be applied outside of that context.

In its initially proposed state, Md. Rule 8–602(e), then proposed as Md. Rule 8–167(d)(2), addressed

the problem of an appeal taken from an order that appears to be a judgment but is later determined not to be one because of an outstanding claim or party in the action and a lack of certification pursuant to [Md.] Rule 2–602.

Minutes. In fact, at the Court's 27 October 1987 appellate rules conference, Judge Eldridge questioned the need for two separate saving provisions in Md. Rule 8–602. After considering the consolidation of the two provisions, the Court recognized that the typical premature appeal is a "different animal" than the Md. Rule 2–602 premature appeal. Tape (27 October 1986). Consistent with this determination, the two provisions were kept separate and Md. Rule 8–602(e) was limited to the Md. Rule 2–602 problem.

No other event in the genesis of Md. Rule 8–602(e) indicates that it, or any portion of it, was intended to address any other problem. The text of the subsection did change as to the number and quality of actions that could be taken by the appellate courts when faced with a Md. Rule 2–602 problem. These changes also included the eleventh hour change, proposed by the Rules Committee Chair and adopted by the Court, regarding an appeal that is filed both too early and too late. Despite these changes to Md. Rule 8–602(e), from its initially proposed state to its current incarnation, its focus on the Md. Rule 2–602 problem has never wavered. Because Mr.

Jenkins is not faced with such a problem, Md. Rule 8–602(e) offers no relief for his too early/too late appeal. Our decision to deny him relief is consistent with both the clear and unambiguous meaning of the text of Md. Rule 8–602(e)(1)(D) and its authors' intent.

We are, therefore, without authority to treat Mr. Jenkins's notice of appeal as if timely filed.

APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANT.

PAUL E. ALPERT, Judge, Specially Assigned, dissenting.

I dissent. No doubt a strict and literal reading of Rule 8–602(d) would be consistent with the majority's theory of this case. I believe, however, that we must look to the rule's intent, *i.e.*, to save premature appeals. The trial judge in his opinion concluded "that the division was to be one-half of the marital portion of the pension. Counsel shall prepare an appropriate declaratory judgment...." The declaratory judgment does nothing more than reflect and implement the trial judge's decision. The majority is absolutely correct when they state, "The trend, in Maryland and nationally, is to remove the technical hurdles that sometimes frustrate access to the courts." Op. at 826. I would continue that trend.