762 A.2d 142

**Edna CARR**

v.

**Andrew J. LEE.**

**No. 2685, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 13, 2000.

214

Robert J. Brilliant, Annapolis, for appellant.

William M. Simmons, Annapolis, for appellees.

Argued before HOLLANDER, EYLER and WILLIAM W. WENNER, (Ret., specially assigned), JJ.

EYLER, Judge.

It is an understatement to observe that there are many decisions by Maryland appellate courts addressing the concept of appealability. We add to that list by publishing this opinion, in which we discuss the 1997 amendment to Rule 8–602(d), a so-called savings provision.

### Factual Background

Andrew J. Lee, appellee, contracted to buy property known as 441 Broadneck Road, located in Anne Arundel County, from Howard Smith, Donald Smith, and Saundra Parker ("the Smiths"). A gravel driveway located between that property and the property next door owned by Edna Carr, appellant, had been used by both appellant and the Smiths.

In addition to the contract of sale, appellee and the Smiths entered into a document entitled "affidavit." In the affidavit, the Smiths stated that (1) they were the owners of the property located at 441 Broadneck Road, (2) the driveway between 441 Broadneck Road and the adjacent property was located in part on the Smiths property and appellant's use was permissive, and (3) such use was not pursuant to an express easement, an interest acquired by adverse possession, or a prescriptive use or easement. The affidavit provided that the

Smiths would indemnify appellee "from any loss or damage, including reasonable attorney's fees which may occur due to any misstatement or misrepresentation, whether intentional or negligent, contained in this affidavit or as the result of the necessity of Andrew J. Lee to defend his title from such use or in connection with the termination of such use." There was no survey or title search done at that time.

Prior to closing, appellee engaged David Green and Survey Associates of Maryland, Inc. ("Green") to perform a boundary survey of the property being acquired. The survey, prepared in August, 1995, incorrectly reflected that title to the gravel driveway, as well as the property on which the Smith house was located, was held by the Smiths. Appellee and the Smiths settled on the property.

In October, 1995, appellee contacted another surveyor to place stakes on the boundary lines. At that time, it was discovered that the Green survey was incorrect and that the property line not only did not include a portion of the gravel driveway but did not include a portion of the property on which appellee's house was located. Appellee advised Green of this discovery, and Green, in January, 1996, corrected his survey. In the Spring of 1996, appellee advised appellant of the above facts, including that a portion of his house was located on her property.

Appellee filed a complaint, later amended, in the Circuit Court for Anne Arundel County against appellant to quiet title, against the Smiths for rescission of the contract of sale, and attorney's fees, and against Green seeking damages for professional negligence. The claim against Green was voluntarily dismissed prior to trial. Appellant filed a third-party claim against Green, seeking damages, and a counterclaim against appellee, seeking the right to use the gravel driveway.

The case was tried non-jury on December 8 and 9, 1999. At the conclusion of the trial, from the bench, the court ruled as follows. First, the court stated that it was undisputed that appellee acquired the property under the corner of his house by adverse possession. Second, the court reviewed the evi-

dence and concluded that appellee acquired ownership by adverse possession to the portion of the gravel driveway to which he did not hold record title.

The court concluded:

So, what I have been inclined to do based on my inspection, is to make it in effect a pie wedge, which I have sketched on this map and will ask the parties to confer about and see if they could agree on a metes and bounds description. If not, the Court will if necessary appoint a surveyor and come up with its own.

But, it would be a line of adverse possession which would run from the pipe found on Broad Neck Road, which is the dividing line correctly between the two properties, to the pipe found at the edge of Ms. Carr's garden. So, the Court would certainly not take her garden by this because she has apparently used that and that was the same area used by the pony stable and so forth in past years.

And would run straight on back without deviating to a point that would be located approximately 35 feet beyond the southernmost edge of the chicken coop. Which puts it, I think, approximately five feet past the pine tree. And that would be the end of the area which is very close to the edge of the clearing.

Again, I don't know that the Court can be exact about where the clearing starts and ends because that may move over the course of years with precisely how it is kept clear. I think it would go at least that far though.

At that point the Court would find it should make a 90 degree turn and go back to the actual line of title which would be a distance of, at that point, approximately 40 feet—I may be wrong about that estimate, it is less than an inch as I scaled it on this photocopy, there [may be] some error in scale by the photocopying process—to the point where it would intersect with the existing actual title line of the Lee property and would then continue with the Lee property original metes and bounds description until it closes again at the same pipe found on Broad Neck Road.

So, that whole distance is, I think, approximately six and one-half inches so that is going to be about 350 feet from the edge of Broad Neck Road before it makes that right angle turn and goes back to the existing line.

The trial court then found that the error had not been created by Green but that the situation had existed since the 1940s. Based on that finding, the court dismissed the claim by appellant against Green. The court then turned its attention to the claim for counsel fees by appellee against the Smiths. The court stated:

As to the claim for counsel fees by Mr. Lee against Ms. Parker and the two Mr. Smiths, the Court does not think that although it was sort of sprung on them at the settlement table and although they did not have an attorney, I think that it is an enforceable contract anyway. The fact that they didn't understand precisely all of the language in it, I don't think would protect them from it because it would not be a mutual mistake.

If anything it might be a one-sided mistake. So I do think that technically speaking they are obliged to indemnify, which would include counsel fees. I think practically, at this point it would only include counsel fees and costs because the Court does not find that they conveyed less than the metes and bounds description.

It was an error in the representation that they were made to sign that they were conveying it by title and not by adverse possession. Indeed they were conveying it by adverse possession, but the fact that it was adverse possession and not title does not mean that there was any damage to Mr. Lee in terms of loss of the property.

In fact, it means that there was a gain to him of the property and that the property that he was conveyed arguably might be worth more than the property which he thought he was going to be conveyed.

I haven't gone and followed that line of reasoning to the point of saying whether there would be any possibility of a set-off. In other words, if what they conveyed was more

than what they thought they conveyed, if that should create a set-off for the counsel fees, and will not attempt to do that at this point.

Something else that the parties might consider is that this I think is an appealable case. Whether it is winnable on appeal is another question. But, in the event of an appeal there certainly would be a lot more costs to either side and that might give rise to the possibility of compromise in terms of the counsel fees issue and perhaps in terms of the issue of where exactly the line might be set.

It might be something that would be subject to negotiation between the Carrs and Mr. Lee in order for everyone to avoid an appeal that they might stipulate and agree to settle the case beyond this for any further litigation. That the line would be slightly different and the Court otherwise is prepared to order.

Do counsel and parties have any questions before we release the parties? And then I guess we would need to reset the case at a later time if there is not an agreement the parties can reach.

MR. _____: Only one question. You indicated, I believe, that we are entitled to attorney[']s fees, but you did not set the amount.

THE COURT: That is true, I have not done that. I would be inclined to take that under advisement and urge the parties to talk about it. And then also, I guess I would be asking if the parties are able to reach an agreement, that could be submitted to the Court.

If the parties are not able to reach the agreement, I would ask if Mr. Simmons would draft a form of order that I would ask other counsel and Mr. Green to consent to, not as substance but as a matter of form, leaving blank the number for counsel fees. And then the Court could fill in that number.

MR. SIMMONS: Thank you, Your Honor.

THE COURT: And I would ask if we could get that done, because of the holidays coming up I won't ask you to get it

done by the end of this month, but perhaps by January the—within 30 days from now.

MR. SIMMONS: I will draft the order and have it available for everybody within—

THE COURT: January the 7th.

MR. SIMMONS:—by early next week. I will have it early next week for everyone.

THE COURT: And then the Court would be ready to put that in writing within 30 days from today's date. And I would indicate that because it is not a complete decision, that any time for noting an appeal would run from that time. From the time that the Court would finalize the order.

Anything else from counsel or Mr. Green?

MR. BRILLIANT: Are you going to favor us with a copy of your drawing?

THE COURT: Yes, I will provide that. I have only done one, but I will provide that copy and if counsel wants to make a photocopy and return it to the Court that would be fine. Otherwise, the Court will replicate it. I have noted on there where I believe approximately the pine tree is. But again, my measurements run from the edge of the chicken coop and not from the pine tree. I just used that as a reference point since the chicken coop is located on Mr. Green's copy of the survey and the pine tree is not.

I will retain the file while we are waiting for that order. If counsel want to approach the bench I will give you this and then ask that someone return it to the Court's file.

Our review of the record indicates that appellant filed a motion to amend judgment on December 17, 1999. Appellee filed an opposition to that motion and a request for a final order on December 30, 1999. Appellant filed a notice of appeal on January 7, 2000.

The circuit court signed three orders on January 10, 2000, which were docketed on January 12, 2000. The first order provided that "the property described on attached Exhibit A"

had been acquired by adverse possession by appellee and that appellant had no right to use any portion of the driveway located on appellee's property. The attached Exhibit A was a plat depicting a metes and bounds description of the property acquired by adverse possession. The order further provided for judgment in favor of appellee against the Smiths for attorney's fees in the amount of $6,000.

The second order was entitled "Opinion and Order as to Award of Counsel Fees," in which the court gave reasons for the amount of attorney's fees awarded and referred to the court's separate order on the merits previously described. The third order denied appellant's motion to amend.

On January 19, 2000, appellee filed a motion for reconsideration with respect to the amount of attorney's fees. On February 15, 2000, that motion was denied. On March 14, 2000, appellee filed a notice of appeal from the order awarding attorney's fees in favor of appellee and against the Smiths, contending that the amount was inadequate.[1]

## Question Presented

On appeal, appellant contends that the circuit court erred in determining that appellee had acquired title to the property in question by adverse possession, and that the court erred in dismissing appellant's claim against Green. Appellee has filed a motion to dismiss appellant's appeal, contending that appellant's notice of appeal was filed prematurely.

We agree that appellant's appeal must be dismissed.

## Discussion

### Motion to Dismiss

Ordinarily, an appeal must be taken only after the entry of a final judgment. *See Jenkins v. Jenkins,* 112 Md.App. 390, 396, 685 A.2d 817 (1996).[2] According to Md.

---

1. This cross-appeal was voluntarily dismissed as of September 18, 2000.

2. Exceptions for certain collateral orders and certain interlocutory orders are not applicable here.

Rule 1–202(n), a judgment is "any order of court final in its nature entered pursuant to these rules." *See also Jones v. Hubbard*, 356 Md. 513, 524, 740 A.2d 1004 (1999)(stating that an order by the court is only considered a judgment if the court has "clearly indicated that the issue submitted has been adjudicated completely and it has reached a final decision on the matter."). A final judgment has three necessary attributes:

> (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601.[3]

*Id.* (quoting *Board of Liquor License Comm'rs v. Fells Point Cafe, Inc.*, 344 Md. 120, 129, 685 A.2d 772 (1996)(quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767 (1989))).

■■■■ As stated in *Jones*, "[r]endition of judgment is the judicial act by which the court settles and declares the decision of the law on the matters at issue." *Id.* at 520, 740 A.2d 1004. There are no specific formal requirements, however, in the rendition of judgment. *Id.* at 524, 740 A.2d 1004 (quoting *Davis v. Davis*, 335 Md. 699, 711, 646 A.2d 365 (1994)). Accordingly, "whether a judgment has been rendered in a particular case is an inquiry that must be made on a case-by-case basis and which focuses upon the actions and statements of the court." *Id.* at 525, 740 A.2d 1004 (quoting *Davis*, 335 Md. at 711, 646 A.2d 365).

---

**3.** The cases cited for this proposition were decided prior to the 1997 amendment to Md. Rule 2–601. Effective October 1, 1997, Md. Rule 2–601 was amended to require that each judgment be set forth on a separate document and that the clerk prepare, sign, and enter the judgment. Prior to this amendment, the Rule only required that the clerk enter the judgment. The proposition that "the clerk must make a proper record of [the judgment] in accordance with Md. Rule 2–601" is still valid post-amendment; however, the specific requirements for entering them, as mandated by Rule 2–601, have changed.

█ Md. Rule 8–202(a) provides that a notice of appeal must be filed within 30 days following the entry of the judgment or order from which the appeal is taken, unless otherwise provided by Rule or by law. Except for certain criminal proceedings governed by Md. Rule 8–204, "the only method of securing review by the Court of Special Appeals is by the filing of a notice of appeal within the time prescribed in Rule 8–202." Md. Rule 8–201(a). Pursuant to recently amended Md. Rule 2–601, a judgment must be set out on a separate document, as distinct from any opinion or memorandum, and the judgment is effective when that document is recorded by the clerk. At that point, the 30 day period for noting an appeal commences. *See Byrum v. Horning*, 360 Md. 23, 29, 756 A.2d 560 (2000); *Raynor Associates L.P. v. Baltimore Door and Frame Co.*, 357 Md. 303, 309 n. 4, 744 A.2d 25 (2000).

█ In the case before us, there was no final judgment until January 12, 2000. On December 9, 1999, the circuit court not only contemplated that a written order would be executed, and expressly indicated that its decision was not final, it had not actually decided all matters to be adjudicated. The court outlined its thoughts and conclusions but left open an exact determination as to the property acquired by adverse possession, that determination to be the subject of later proceedings, if not agreed upon between the parties. Additionally, the amount of attorney's fees was left open, to be determined by subsequent proceedings if not agreed upon. While the issue of counsel fees may sometimes be collateral, it was not in this case because the issue involved a question of indemnification under an agreement. *Compare Dent v. Simmons*, 61 Md.App. 122, 130, 485 A.2d 270 (1985)(holding that the trial court had jurisdiction to award attorney's fees more than 3 months after the appeal of the case in chief because the award of counsel fees was a matter collateral to the main cause of action), *and MD Nat'l Capital Park & Planning Comm'n v. Crawford*, 59 Md.App. 276, 303, 475 A.2d 494 (1984)(holding that the trial court did not exceed its jurisdiction when it ruled on the issue of attorney's fees after an appeal had been filed because the

award of attorney's fees was a collateral matter) *with G–C Partnership v. Schaefer,* 358 Md. 485, 488, 749 A.2d 823 (2000)(holding that the circuit court did not have discretion to direct the entry of a final judgment pursuant to Rule 2–602(b) because the counsel fees that were awardable pursuant to the parties' contract had not been determined when the appeal was noted).

■ This brings us to the question of whether the appeal is saved by either of the savings provisions in 8–602(d) or (e). If neither of the savings provisions applies, "the final judgment rule and the requirement of a timely notice of appeal continue to dictate dismissal of a premature appeal." *Jenkins,* 112 Md.App. 390, 411, 685 A.2d 817 (1996). Subsection (e) is only applicable in multi-claim cases when there has been a complete decision with respect to a party or claim. *See Jenkins,* 112 Md.App. at 424–25, 685 A.2d 817. In the case before us, the decision was not complete with respect to the issues between appellant and appellee or appellee and the Smiths.

Subsection (d), prior to its amendment in 1997, provided:

A notice of appeal from a ruling, decision, or order that *would be appealable upon its entry on the docket,* filed after the announcement of the ruling, decision, or order by the trial court but before entry of the ruling, decision, or order on the docket, shall be treated as filed on the same day as, but after, the entry on the docket.

(Emphasis added).

In *Jenkins v. Jenkins,* Judge Harrell, writing for this Court, examined the development and application of Rule 8–602(d) and determined that the rule applied only to a notice of appeal filed after an announcement of a decision, order, or ruling that was intended to be the final, unqualified disposition of the case but before the order was placed on the docket. *Id.* at 410–23, 685 A.2d 817. The decision on December 9, in the case before us, was not appealable even when entered on the docket because it was not intended as a final judgment, and it did not dispose of all issues.

Rule 8–602(d) was amended, however, effective October 1, 1997. The amendment was in conjunction with an amendment to subsection (a) of Rule 2–601. As mentioned above, Rule 2–601(a), as amended, requires all judgments to be entered on a separate written document. The savings provision in Md. Rule 8–602(d) now provides:

A notice of appeal filed after the announcement or signing by the trial court of a ruling, decision, order, or judgment but before entry of the ruling, decision, order, or judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

The reporter's note to the amendment iterates that it is intended to allow "an appeal to be saved when the notice of appeal is filed after the announcement or signing by the Court of a ruling, decision, order, or judgment but before its entry on the docket." *Maryland Register*, Vol. 23, Issue 24, at 1668 (Nov. 22, 1996). The reporter's note indicates that the phrase, "from a ruling, decision, or order that would be appealable on its entry on the docket," was deleted, because the Rule only addresses the timing of a filing of a notice of appeal. *Id.* The note further states that the question of entitlement to appellate review is answered by statute and case law. *Id.* The note concludes that, because a determination of appealability is not relevant to the timing issue, the language dealing with appealability was deleted. *Id.*

In the instant case, on December 9, 1999, the judge announced a decision from the bench, subject to further proceedings, if necessary. The court stated it would be ready to finalize the results and put its orders in writing 30 days from that date. Following that statement, the trial judge said, "I would indicate that because it is not a complete decision, that any time for noting an appeal would run from that time. From the time that the Court would finalize the order." The docket entry for December 8 and 9 reads as follows:

Court Trial * * * PRIORITY* * * RESET/REC13 Hearing Held

CASE CALLED FOR HEARING ON COURT TRIAL IN OPEN COURT BEFORE JUDGE CAROOM COUNSEL HEARD. TESTIMONY TAKEN. CASE CON'T TO 12/9/99 @ 9:45 AM. 12/9/99 CASE CALLED. COUNSEL HEARD. TESTIMONY RESUMED. AT THE END OF THE PLAINTIFF'S CASE, DEFENDANT CARR MOVED FOR JUDGMENT DENIED. TESTIMONY RESUMED. CLOSING ARGUMENTS. COUNSEL PREPARED ORDER

The next docket entry is on December 17 and reflects the filing of appellant's motion to amend. Appellant's notice of appeal was docketed on January 7, 2000.

█ The effect of Rule 8–602(d), a timing rule, treats a notice of appeal as having been filed the same day as the docket entry of the decision, assuming a notice of appeal is filed after the decision but before the docket entry. The problem in this case is more than a timing issue. The court's decision on December 9, whether docketed on that day or later, did not resolve all issues, and was not a final judgment. All issues were not resolved until January 10. The final judgment was entered on January 12, 2000, and no notice of appeal was filed thereafter by appellant.[4]

█ Finally, we address whether appellant's filing of a motion to amend judgment, pursuant to Md. Rule 2–534, prior

---

4. We do not need to decide whether the current versions of 2–601 and 8–602(d) save an appeal when the decision in question resolves all issues and the only remaining act to be done is to enter a written order. If a notice of appeal is filed after a docket entry reflecting the decision but before the written order is signed and filed, if a written order is contemplated by the court or required by 2–601, 8–602(d) may save that appeal. Similarly, we need not decide the even more technical question that arises when the decision in question resolves all issues subject only to the entry of a written order contemplated by the court, no docket entry is made of the decision prior to the filing of a notice of appeal, and a written order is then filed. Contrary to *Waller v. Maryland Nat'l Bank*, 332 Md. 375, 631 A.2d 447 (1993) and *Jenkins v. Jenkins*, in light of the requirement of a separate judgment in 2–601 as amended, it appears that the appeals should be saved, but these determinations will have to await another day. Perhaps unfortunately for some litigant, given the amount of litigation in this area, that day will probably come.

to the filing of a notice of appeal operated to save the appeal. According to Maryland case law, an otherwise premature notice of appeal filed prior to the withdrawal or disposition of a timely filed motion under Rule 2–532, Rule 2–533 or Rule 2–534 is effective, and the processing of that appeal is delayed until the withdrawal or disposition of the motion. *See Waters v. Whiting*, 113 Md.App. 464, 474, 688 A.2d 459 (1997); *Edsall v. Anne Arundel County*, 332 Md. 502, 506, 632 A.2d 763 (1993)(stating that "[a] notice of appeal, if otherwise effective under the provisions of Rule 8–202(a), will not lose its efficacy because a timely post-judgment motion is filed or is pending, but its effect will be delayed until the trial court rules on the pending motion, or it is withdrawn, as provided by the Rule." (footnote omitted)).

In *Atlantic Food & Beverage Sys., Inc. v. City of Annapolis*, 70 Md.App. 721, 523 A.2d 648 (1987), the Court examined the language of Md. Rule 2–534 to ascertain whether a motion to alter or amend judgment had been timely filed. Md. Rule 2–534, which has undergone no major changes since *Atlantic Food*,[5] provides as follows:

**Motion to alter or amend a judgment—Court decision.**

In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. . . .

The Court examined the language of the Maryland Rule as compared to its federal counterparts. As stated by the Court:

Maryland Rule 2–534 is derived from two federal rules, Rule 52(b) and Rule 59(e), which provide in pertinent parts:

---

5. In a 1986 amendment to Md. Rule 2–534, the legislature substituted "court decision" for "court trial" in the rule heading, and substituted "decided" for "tried" near the beginning of the first sentence.

> Upon motion of a party made *no later than* 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly.

> A motion to alter or amend the judgment shall be served *not later than 10 days* after entry of judgment.

*Id.* at 728, 523 A.2d 648. In interpreting these rules, federal courts have deemed it proper for a court to entertain a motion to alter or amend judgment filed prior to the actual entry of judgment, based upon the language that motions must be served no later than ten days after entry of judgment. *Id.* at 728–29, 523 A.2d 648 (citations omitted).

The *Atlantic Food* Court stated that the implication of the Maryland rules drafters' decision to decline to adopt the language of the federal rules is obvious:

> Rejecting the less precise federal format, the drafters decided to impose a strict procedural timetable under which parties may file their post-judgment motions: entry of judgment must be made first, and only then may the moving party file a post-judgment motion.

> ... To file a motion "within ten days" of judgment logically implies that the party files the motion within a discrete ten day period beginning with the entry of final judgment. Consequently, a court may not entertain motions prior to that judgment.

*Id.* at 729–730, 523 A.2d 648. Thus, the Court held that the Maryland rules require a moving party to await final judgment before he or she attempts to file a motion to alter or amend that judgment. *Id.* at 728, 523 A.2d 648. In the instant case, the trial court had not issued a final judgment at the time that appellant filed the motion to amend judgment. Thus, the filing of the motion to amend judgment did not have any effect on the premature appeal.

We may not confer appellate jurisdiction on our own initiative. *See Jenkins,* 112 Md.App. at 408, 685 A.2d 817. Thus, in accordance with Md. Rule 8–602(a)(3), we dismiss this appeal because it was not filed within the time prescribed by

Rule 8–202, and it does not fit within any of the applicable savings provisions. While this may be a harsh measure, "[t]he results, however seemingly inequitable, are necessary (perhaps quixotically) to promote the judicial system's interest in finality of judgment and confidence in the judicial disposition of disputes." *Jenkins*, 112 Md.App. at 408–09, 685 A.2d 817.

**APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANT.**