3 A.3d 480

**Blake G. BUSSELL**

v.

**Komesi BUSSELL.**

**No. 1784, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 1, 2010.

Blake G. Bussell, Pro Se of LaPlata, MD, for appellant.

Elizabeth L. Cawood (Law Office of Raymond Carignan, on the brief) Clinton, MD, for appellee.

**140**

Panel: *DAVIS, HOLLANDER and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

ARRIE W. DAVIS, J.

On January 23, 2009, appellee, Komesi Bussell, filed a Complaint for Absolute Divorce in the Circuit Court for Charles County against her husband, appellant, Blake G. Bussell.[1] The circuit court entered a *pendente lite* order to address the issues between the parties during the pendency of the divorce proceedings. Appellant appeals from the entry of the *pendente lite* order which provided as follows: appellee was granted sole legal and physical custody of the parties' two minor sons, appellant was provided with "reasonable and liberal visitation" on alternating weekends, holidays were divided equally between the parties, appellant was granted four weeks with the children during summer vacation, both parties were prohibited from making "disparaging or negative comments regarding the parties in the presence ..." of the children, appellant was required to pay child support in the amount of $782 per month, alimony in the amount of $500 per month and appellee's attorney's fees in the amount of $750, appellee was granted sole use and possession of the marital home, the parties were required to share the children's medical expenses and both parties were permitted equal access to the children's medical, dental and educational records.

Appellant, proceeding *pro se* on this appeal, presents six questions,[2] which we have rephrased and consolidated as follows:

I. Did the trial court err in granting appellee *pendente lite* use and possession of the marital home?

---

* Arrie W. Davis, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a specially assigned member of this Court.

1. Appellant represented himself before both this Court and the trial court.

2. The questions, as presented by appellant, are as follows:

II. Did the trial court err in granting appellee *pendente lite* custody of the two minor children?

III. Did the trial court err in ordering appellant to pay *pendente lite* alimony to appellee?

We answer each of appellant's questions in the negative. Accordingly, we affirm.

## FACTUAL BACKGROUND

On September 30, 2009, the circuit court held a *pendente lite* hearing to make determinations regarding custody, child

---

1. Should Defendant B Bussell [sic] moved out of his home away from his children leaving his children, with what he believes, is an unfit mother?
2. Should Defendant B Bussell, be seen as a father who abandoned his children, who could have desertion claimed against him, leaving his children?
3. Should Defendant B Bussell, let Plaintiff K Bussell ruined [sic] his life, ruined his family life, be ruined by some one that can not fact and admit their own mental state, their short comings in dealing with others on a personal level, a family level, should Defendant B Bussell, get out of his home, leave his children and then pay for this to be done?
4. Should Defendant B Bussell, have his personal home life destroyed, have his personal belonging [sic] ruined, personal gifts destroyed that are irreplaceable, have his personal space invaded, family things he has enjoyed ruined or given away the family barbeque, presents B Bussell gave to his children thrown out, B Bussell [sic] personal items given away clothing, tools, blender, glass ware, because B Bussell likes it enjoys, it uses it with his children, in their father son relationship.
5. Because of the nature of Plaintiff Komesi Bussell, does this mean that Defendant Blake Bussell was having an affair, he was not, so should B Bussell be punished, pay the fine, of alimony, for breaking the legal binding contract of marriage, because of delusional thoughts?
6. What should B. Bussell have done when K. Bussell [sic] normal plan of action for K. Bussell to get her way over the course of our marriage for 14 years with no rational thought behind the thinking whether proven right or wrong later on, did not matter, this is what would transpire. It was K. Bussell [sic] way or the family being held hostage, the children, every one, and all, others in proximity too, yelling and screaming at every one, a temper tantrum, vicious nasty behavior, ruin [sic] everything, respect no one, hurt every body, was the theme [sic], make them all pay [sic] punish everybody, the family, children, husband, show everyone

support, alimony and related issues pending the resolution of the divorce action between the parties. Appellee requested custody of the children, "financial assistance" to assist her in leaving the family home and relocating with the children or, alternatively, exclusive use and possession of the family home to raise the children. In addition, she requested that appellant be required to pay her attorney's fees.

Appellee testified that she married appellant in 1995. During the marriage, the parties had two sons, Brama and Brenton. Her husband, appellant, who worked for Prince George's County Schools as a physical education teacher, provided the primary income for the family. According to appellee, appellant spent little time at home with the children and instead spent most of his time outside of the house with a person who she believed was his girlfriend. She testified that she was the day-to-day caretaker of the couple's children, preparing meals and getting them to school. She also worked full-time as a manager at a Dollar Tree store from open to close and on alternating weekends. She further testified that she was unable to move out of the family home with the children or afford to live in the family home with the children based solely on her income. Appellee entered into evidence a "financial statement" and copies of her pay stubs in support of this contention.

Appellee explained that the parties had a tumultuous marriage, but in the past three years the arguing and dysfunction increased. Appellee related two incidents where appellant failed to pay the family's bills. On one occasion, appellant failed to pay the electric bill and appellee was forced to live in the home with the children, without electricity, for one week. She had to apply for assistance from Social Services and other charities to pay the bill and have the electricity restored. The bills and her applications for assistance were entered into evidence. Appellee also testified, although in less detail, to a similar incident where the water was shut off due to failure to

---

they have to comply. This behavior would be kept until whatever K. Bussell had wonted [sic] was complied with.

pay the water bill. Appellant asserted that appellee was responsible for the water and electric bills and was thus responsible for the interruption of utility services.

Appellee also related that approximately three years ago, her daughter from a prior relationship reported that appellant had sexually abused her while she was living in the family home.[3] As a result of that accusation, appellee "moved out" of the couple's bedroom and into her daughter's bedroom, where she remained because she could not afford to leave the family home.

The Best Interest Attorney for the children elicited testimony from appellee that the parties often engaged in "screaming and yelling" which had negatively impacted the children; as a result, appellee enrolled herself and her children in therapy.

Appellant likewise testified that the marriage had deteriorated to the point that the couple could no longer be in each other's presence without arguing. He recounted that, on a number of occasions, appellee accused him of cheating and attempted to turn his children against him. Appellant vehemently denied that he had a girlfriend.

Appellant further related that he believed himself to be the primary caregiver for the children, as evidenced by the fact that he enrolled the boys in baseball, would take them on vacations and have family barbeques with them. He complained that appellee's lifestyle was detrimental to his sons because she permitted them to eat their meals in front of the television and did not keep the house tidy. He also stated that he believed that his wife suffered from bipolar disorder. According to appellant, appellee was the one who would yell and scream and the only times that he engaged in such behavior was to "cover up" what she was saying so that his children would not hear it.

---

**3.** Appellee's daughter had moved out of the family home at the time of the proceedings and was not a subject of the litigation between the parties.

With regard to his employment, appellant explained that his primary source of income was his teacher's salary, which was approximately $51,000 per year, although he often had "side jobs" doing security work on the weekends and during the summer to generate extra income. He approximated that doing one such side job over the previous summer earned $1,500–$3,000. He acknowledged that appellee makes "about half of what [he] make[s]." [4]

At the conclusion of his testimony, appellant admitted that the dysfunction in the household had to end for the sake of his children, but that he believed that it was in their best interest to be in his custody and to remain in the family home, which the parties rented on a month-to-month basis.

The children's attorney provided the court with the following analysis:

> The children have been living in chaos. I think we all agree it's been two and a half years but perhaps longer than that. Perhaps this is a marriage that was doomed for a really long time.

> Both of these parents love their children. Their testimony was clear about that in the ways that they spoke about their children. They love their children. Both have a desire to have custody of these children.

> We can't chop the children up in little bits. And, if [sic] fact, there was no testimony that the children should be split with one having one and one having the other. And, in fact, after speaking with these children on several occasions I know they want to be together. Splitting them is not an issue here.

> The one factor in the list of factors the Court considers when they decide where children should live most of the time that hasn't been discussed today because the children are not here is the preference of the child. I did not want the children in court today, and I said specifically that they

---

4. Appellee introduced copies of appellant's pay stubs into evidence, as well.

should not be here ... But, Brenten clearly favors his mother. He loves his mother. He loves them both. But, he's really close to his mother.... Just a recognition of that and understanding the Brenten really, really wants to be with his mom ... and I think there was some testimony about this a little bit where Brama is less inclined that way but wants to be with his brother. They're a pair. They do a lot of things together.

I think the Court should recognize the preference of the child because they have reached a certain age....

The trial court made the following findings before ruling:

From what I ... well, from most of, not all, from most of what I have been told here today I have the sense ... I've deduced that these kids would be okay in the custody of either of these parents as long as the other parent wasn't there to make trouble of the sort we've heard described by both of them here today....

Since I am able to say that, I suppose my function becomes one of trying to discern what kind of outcome from a logistical [sic] and, if you will, fiscal perspective, is going to be the least onerous among all concerned.

Accordingly, the court ruled orally from the bench on September 30, 2009 and awarded appellee sole legal and physical custody, granted appellant liberal visitation to be no less than alternating weekends, divided the holidays between the parties and ruled that appellant was required to pay child support in the amount of $782 per month and alimony in the amount of $500 per month. Further, the court stated that it was "going to order" that, by October 15, 2009, appellant pay appellee's attorney's fees "accrued up to this point." The court further stated that "we are going to enter a use and possession order with regard to the Kalmia Court house in favor of the custodial parent, effective October 15th ..."

At the conclusion of the hearing, the court instructed appellee's counsel as to what should be included in the court's Order:

And, as far as I'm concerned, [appellee's counsel], you're going to have to draft the order.... I should thrown [sic] in in [sic] case the thing endures until next summer ... I hope it doesn't ... Mr. Bussell is entitled to four weeks with the kids in the summertime. Either ... my guess is that he'd probably prefer two separate one week ... I mean two separate two week intervals.

Unless the parties agree otherwise, they're going to start on the 4th of July.... Put all that in the order.

. . . .

Thereafter, appellant requested that a provision be added to the order regarding division of payment for medical expenses and the children's attorney requested that a provision be added to prevent the parties from disparaging each other in the presence of the children. The court granted both requests. The parties discussed the logistics of drafting and circulating the order between them for edits and revisions, the court indicated that the order should be submitted "no later than 30 days from now. And the sooner, the better...." The proceedings concluded after the court directed the parties to set the case in for a status conference.

The docket entries summarize the foregoing and also state, in pertinent part:

Plaintiff's attorney to prepare and submit order within 30 days.

Parties to appear for Status Conference 30 days from today unless order has been submitted.

Appellant noted an appeal on October 5, 2009. The order was not submitted until October 28, 2009. The status conference, originally set for October 30, 2009, was postponed until November 3, 2009, when appellee and the children's attorney appeared. Appellant did not appear. The court signed the written order, documenting its earlier oral rulings, in open court and it was docketed that same day. No subsequent notice of appeal was filed. Additional facts shall be supplied *infra* as warranted.

## APPEALABILITY

■■■ Ordinarily, a *pendente lite* order granting use and possession of a family home, though not a final judgment under Md.Code (2006 Rep. Vol., 2009 Supp.), Courts and Judicial Proceedings, C.J.P. § 12–301, is immediately appealable as an interlocutory order, pursuant to C.J.P. § 12–303; *Pitsenberger v. Pitsenberger,* 287 Md. 20, 24 n. 3, 410 A.2d 1052 (1980). Similarly, a *pendente lite* order pertaining to payment of alimony or child support is immediately appealable. *Pappas v. Pappas,* 287 Md. 455, 462, 413 A.2d 549 (1980) ("Orders for the payment of alimony or child support are not expressly covered by the statute. However, our cases make clear that such orders are orders '[f]or ... the payment of money' under § 12–303."). An order that deprives a parent of his or her child is also a statutorily recognized appealable interlocutory order. C.J.P. § 12–303(3)(x); *see Frase v. Barnhart,* 379 Md. 100, 117–19, 840 A.2d 114 (2003). Thus, appellant was entitled to note an appeal from the interlocutory order "... entered by the circuit court in a civil case" based upon each of these grounds. C.J.P. § 12–303.

■■■ Appellant noted his appeal on October 5, 2009, subsequent to the court's oral ruling from the bench, but prior to the signing of the order and its entry on the docket. Accordingly, we must treat his appeal as premature in our analysis. The parties have failed to observe this procedural defect, but the court may raise this issue *sua sponte,* as the existence of a final judgment, or in this case, an appealable interlocutory order, is a "jurisdictional fact" that is a "prerequisite to the viability of an appeal." *Jenkins v. Jenkins,* 112 Md.App. 390, 399, 685 A.2d 817 (1996) (citations omitted).

"The date of entry of a final judgment, under Md. Rule 8–202, fixes the post-judgment schedule for filing of certain documents, including the notice of appeal." *Id.* (footnote omitted). Maryland Rule 8–202(a) provides: "Except as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken...." The appeal before

us in the instant case is from an interlocutory order. The Court of Appeals has explained:

From the standpoint of judicial administration permitting appeals from oral rulings which would be appealable interlocutory judgments if properly entered is subject to the same objection as permitting appeals from oral rulings which would be final judgments if properly entered.

*Billman v. Maryland Deposit Ins. Fund Corp.*, 312 Md. 128, 132, 538 A.2d 1172 (1988). The Court further explained that "the appealable interlocutory judgment partakes, insofar as it is appealable, of the nature of a final judgment." *Id.* at 133, 538 A.2d 1172.

Maryland Rule 8–602(d), however, saves appellant's prematurely filed appeal. This Court examined the applicability of this Rule in a similar case, in *Jenkins, supra*, where the circuit court issued a written opinion on October 24, in which it stated that "counsel shall prepare an appropriate declaratory judgment and, if necessary, an order in the nature of a QDRO." 112 Md.App. at 397, 685 A.2d 817. An appeal was noted on November 8 and, thereafter, the other party submitted the order to the court embodying the court's ruling, which was signed by the judge on January 31 and docketed on February 9. *Id.* at 398, 685 A.2d 817.

We held that the appeal was premature and that the defect could not be "cured" by Maryland Rule 8–602(d) because the trial judge expressly contemplated further action in the case prior to its decision becoming final. At the time, Maryland Rule 8–602(d) provided:

"A notice of appeal from a ruling, decision, or order *that would be appealable upon its entry on the docket, filed after* the announcement of the ruling, decision, or order by the trial court but before entry of the ruling, decision, or order on the docket, shall be treated as filed on the same day as, but after, the entry on the docket."

*Id.* at 410, 685 A.2d 817 (quoting Md. Rule 8–602(d)).

We held that, "[w]hen a written or oral opinion indicates that a written embodiment of the judgment will follow, the

opinion cannot be a final, unqualified disposition. It is not ripe, therefore, for appeal." *Id.* at 403, 685 A.2d 817. We quoted the earlier decision of the Court of Appeals in *Rohrbeck v. Rohrbeck,* which originally set forth the rule:

"Lest there be any lingering questions about the matter, we now make clear that, whenever the court, whether in a written opinion or in remarks from the bench, indicates that a written order embodying the decision is to follow, a final judgment does not arise prior to signing and filing of the anticipated order unless (1) the court subsequently decides not to require the order and directs entry of judgment in some other appropriate manner or (2) the order is intended to be collateral to the judgment."

*Id.* at 403, 685 A.2d 817 (quoting *Rohrbeck v. Rohrbeck,* 318 Md. 28, 42, 566 A.2d 767 (1989)). *See also Popham v. State Farm Mut. Ins. Co.,* 333 Md. 136, 143, 634 A.2d 28 (1993).

We observed that the rule, as set forth in *Rohrbeck, supra,* is that the judge's intent regarding finality controls. In *Rohrbeck* and *Jenkins,* the trial court indicated its intent that the judgment would not be final because it contemplated that an order would follow its ruling. *Jenkins,* 112 Md.App. at 407, 685 A.2d 817. *Compare Waller v. Maryland Nat'l Bank,* 332 Md. 375, 377–80, 631 A.2d 447 (1993) (Although the judge intended the judgment to be final and the clerk erroneously indicated on the docket that a written order would follow, the final judgment was not properly entered on the docket as required by Maryland Rule 2–601); *Bd. of Liquor License Comm'rs v. Fells Point Café, Inc.,* 344 Md. 120, 126–33, 685 A.2d 772 (1996) (trial court's oral ruling and subsequent written and signed order constituted the final judgment despite the fact that another Memorandum Decision and Order followed that restated his conclusions; thus, the appeal was not premature).

We engaged in a thorough analysis of the history of Maryland Rule 8–602(d) in *Jenkins* and explained that the Rule "contemplates an appealable order, and not a mere announcement of the intended order to be released later." *Jenkins,*

112 Md.App. at 411, 685 A.2d 817 (footnote omitted). Thus, we explained that a subsequent order, as contemplated by the Rule, is one that is confirmatory in nature, following an announcement or decision that was intended at the time of its announcement by the court as the final judgment. *Id.* at 421, 685 A.2d 817. Comparing *Jenkins* to *Waller, supra,* we explained:

> We note that in *Waller* a confirmatory order was not contemplated in the original oral judgment. Had it been, the original oral judgment could not have been considered final by the trial judge and the Court would have been faced with facts similar to the instant case. The judge's oral decision, however, was the final, unqualified disposition of the matter. His ruling lacked facial finality only because of an improper docket entry. Once the proper entry is provided, resulting from the hypothetical confirmatory order, the judge's original oral decision would become a final judgment. Because the *Waller* notice of appeal would have been filed between the original oral order and the hypothetically correct docket entry, the appeal would have been saved by Md. Rule 8–602(d).

*Id.*

Similarly, we noted that the analysis was also consistent with our decision in *Woodfin Equities Corp. v. Harford Mut. Ins. Co.,* 110 Md.App. 616, 630, 678 A.2d 116 (1996), *rev'd in part on other grounds,* 344 Md. 399, 687 A.2d 652 (1997). We opined:

> In a similar fashion, we deemed the appeal in *Woodfin Equities Corp. v. Harford Mut. Ins. Co.,* 110 Md.App. 616, 630, 678 A.2d 116 (1996), timely. In *Woodfin,* this Court employed Md. Rule 8–602(d) to save an otherwise premature appeal. In that case, the trial judge issued a bench ruling granting appellee's motion for judgment. Appellant filed his notice of appeal after the clerk's entry of the ruling on the docket. The docket entry read "Court finds in favor of [appellee] against [appellant].... Order to be submitted". Because, the docket entry contemplated further action, the judge's ruling could not become final without a correct

docket entry or the filing of the written order. Appellant filed his notice of appeal after the contingent docket entry. Later, the trial judge filed a final written order.

*Jenkins,* 112 Md.App. at 421–22, 685 A.2d 817 (citing *Woodfin, supra* ).

We continued, observing that "this Court determined that the trial judge's grant for the motion of judgment [in *Woodfin* ] was intended to be final ... the formal written order, *not contemplated by the trial judge's oral decision,* served the same purpose as the hypothetical confirmatory order in the *Waller* footnote. . . ." *Id.* (Emphasis added). Thus, the appeal was saved by Md. Rule 8–602(d) in *Woodfin. Id.*

Because the memorandum opinion in *Jenkins* contemplated that the parties would create and submit an order to be signed by the judge, we found that it was distinguishable from *Waller* and *Woodfin, supra.* We concluded:

> The opinion in the instant case, therefore, could not become an order that would become "appealable upon its entry on the docket" because it was never intended as the final, unqualified disposition of the matter before the trial court. Only the 31 January 1996 judgment could become a final judgment. It did so on 9 February 1996 when it was correctly docketed by the clerk. Mr. Jenkins, therefore, had to file his notice of appeal between the announcement of this judgment on 31 January 1996 and 9 February 1996 in order to benefit from Md. Rule 8–602(d). *Simply put, in order to benefit from Md. Rule 8–602(d), a notice of appeal must be filed between the announcement of a decision, order, or ruling intended to be the final, unqualified disposition of the case and a docket entry correctly indicating that final judgment has been entered.*

*Id.* at 423, 685 A.2d 817 (emphasis added).

Subsequent to our decision in *Jenkins,* we addressed the 1997 amendment to Maryland Rule 8–602(d), although in a slightly different context in *Carr v. Lee,* 135 Md.App. 213, 762 A.2d 142 (2000). Carr appealed from a trial court's ruling that Lee had acquired title to real property by adverse possession

and the dismissal of her claim against another party. Lee moved to dismiss the appeal on the grounds that it was prematurely filed. *Id.* at 221, 762 A.2d 142. On December 9, 1999, the circuit court announced a decision from the bench regarding adverse possession, but reserved ruling on attorney's fees. Carr noted an appeal on January 7, 2000. *Id.* at 220, 762 A.2d 142. Thereafter, the court resolved the outstanding issues in the case, including attorney's fees and a ruling on a pending motion to amend judgment, and docketed the three orders on January 12, 2000. *Id.* at 221, 762 A.2d 142.

We concluded in *Carr, id.* at 223, 762 A.2d 142:

In the case before us, there was no final judgment until January 12, 2000. On December 9, 1999, the circuit court not only contemplated that a written order would be executed, and expressly indicated that its decision was not final, it had not actually decided all matters to be adjudicated. The court outlined its thoughts and conclusions but left open an exact determination as to the property acquired by adverse possession, that determination to be the subject of later proceedings, if not agreed upon between the parties. Additionally, the amount of attorney's fees was left open, to be determined by subsequent proceedings if not agreed upon. While the issue of counsel fees may sometimes be collateral, it was not in this case because the issue involved a question of indemnification under an agreement.

We held that the appeal was prematurely noted in *Carr* and was not saved by Maryland Rule 8–602(d) or (e). *Id.*[5] In reaching our holding, we examined amendments made to Maryland Rule 2–601 and Maryland Rule 8–602(d). We began our analysis by summarizing our holding in *Jenkins* and further observed:

Rule 8–602(d) was amended, however, effective October 1, 1997. The amendment was in conjunction with an amend-

---

5. Maryland Rule 8–602(e) "is only applicable in multi-claim cases when there has been a complete decision with respect to a party or claim." *Id.* (citing *Jenkins,* 112 Md.App. at 411, 685 A.2d 817).

ment to subsection (a) of Rule 2–601. As mentioned above, Rule 2–601(a), as amended, requires all judgments to be entered on a separate written document. The savings provision in Md. Rule 8–602(d) now provides:

> A notice of appeal filed after the announcement or signing by the trial court of a ruling, decision, order, or judgment but before entry of the ruling, decision, order, or judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

The reporter's note to the amendment iterates that it is intended to allow "an appeal to be saved when the notice of appeal is filed after the announcement or signing by the Court of a ruling, decision, order, or judgment but before its entry on the docket." Maryland Register, Vol. 23, Issue 24, at 1668 (Nov. 22, 1996). The reporter's note indicates that the phrase, "from a ruling, decision, or order that would be appealable on its entry on the docket," was deleted, because the Rule only addresses the timing of a filing of a notice of appeal. *Id.* The note further states that the question of entitlement to appellate review is answered by statute and case law. *Id.* The note concludes that, because a determination of appealability is not relevant to the timing issue, the language dealing with appealability was deleted. *Id.*

*Id.* at 225, 762 A.2d 142.

Under the amended language of Maryland Rule 8–602(d), we held that Carr's appeal was not saved because "[t]he problem in this case is more than a timing issue. The court's decision on December 9, whether docketed on that day or later, did not resolve all issues, and was not a final judgment." In a footnote, we observed:

> We do not need to decide whether the current versions of 2–601 and 8–602(d) save an appeal when the decision in question resolves all issues and the only remaining act to be done is to enter a written order. If a notice of appeal is filed after a docket entry reflecting the decision but before the written order is signed and filed, *if a written order is contemplated by the court or required by 2–601, 8–602(d)*

*may save that appeal.* Similarly, we need not decide the even more technical question that arises when the decision in question resolves all issues subject only to the entry of a written order contemplated by the court, no docket entry is made of the decision prior to the filing of a notice of appeal, and a written order is then filed. Contrary to *Waller v. Maryland Nat'l Bank,* 332 Md. 375, 631 A.2d 447 (1993) and *Jenkins v. Jenkins, in light of the requirement of a separate judgment in 2–601 as amended, it appears that the appeals should be saved, but these determinations will have to await another day.* Perhaps unfortunately for some litigant, given the amount of litigation in this area, that day will probably come.

*Id.* at 226 n. 4, 762 A.2d 142 (emphasis added).

■ It appears that that day has arrived. The judge's oral *pendente lite* ruling disposed of all issues presented by the parties, but provided that a written order would follow. Although, under *Jenkins,* and the previous version of Maryland Rule 8–602(d), appellant's prematurely noted appeal could not be saved, in light of the revisions to Maryland Rule 8–602(d) and the addition of the separate document requirement to Maryland Rule 2–601, we hold that appellant's premature appeal is saved by Maryland Rule 8–602(d).

In *Byrum v. Horning,* 360 Md. 23, 33, 756 A.2d 560 (2000), the Court of Appeals explained that Maryland Rule 2–601, which governs entry of judgment, was amended in 1997 to add a requirement that a final judgment or order not only be reflected in a docket entry, but also embodied in a separate document. Rule 2–601 provides, in pertinent part:

(a) Prompt entry—Separate document. Each judgment shall be set forth on a separate document. Upon a verdict of a jury or a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a verdict of a jury or a decision by the court granting other relief, the court shall promptly review the form of the judgment

presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule. Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.

(b) Method of entry—Date of judgment. The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

The Court explained that "[t]he effect of Rule 2–601(a) has been to convert the official form of a judgment from a docket entry to a separate document. It is the entry of that separate document on the docket which constitutes the entry of the judgment under both rules, and it is the date of that entry which commences the running of the time for noting an appeal." *Byrum*, 360 Md. at 33, 756 A.2d 560.

█ Because trial courts are required to embody their final rulings in a separate document, the mere fact that a written order is contemplated does not necessarily indicate the court's intent that its ruling is not final. In this case, there were no further issues to be resolved and the trial judge merely requested that the parties put his oral ruling in writing. Because Maryland Rule 8–602(d) no longer requires an "... order that would be appealable upon its entry on the docket" but instead applies to a notice of appeal "filed after the announcement ... of a ruling, decision order, or judgment but before entry ... on the docket ....," because judges must always provide for their oral rulings to be later put into writing under Maryland Rule 2–601, and in light of our observation in *Carr, supra*, we hold that appellant's premature appeal is saved by Maryland Rule 8–602(d). Thus, we shall next turn to appellant's claims and review them on their merits.

## LEGAL ANALYSIS ON THE MERITS

Appellant devotes significant portions of his brief to making new factual allegations and disputing facts that were presented during the *pendente lite* hearing. His brief contains no legal argument, save scant citations to inapplicable law.[6] We shall address what we perceive to be his contentions on appeal. As we explain, *infra*, each of appellant's claims lack merit. Thus, we affirm the decision of the circuit court.

We have distilled from appellant's six questions presented that he takes exception to the court's decision to grant appellee, as the custodial parent, use and possession of the family home, the court's grant of sole legal and physical custody to appellee and the award of *pendente lite* alimony in the amount of $500 per month.

### *Custody and Use and Possession of the Family Home*

The overall thrust of appellant's contentions are that the trial court erred in determining that appellee should have sole legal and physical custody of the children and, as the custodial parent, reside with the children in the family home. These complaints are intertwined; accordingly, we shall address them together. Although appellant fails to articulate precise grounds for how the trial court erred in making these determinations, it appears that appellant contends that appellee, despite her testimony, is not the primary caretaker of the children. He further alleges that appellee suffers from mental health issues that inhibit her parenting abilities.

---

**6.** For example, appellant intersperses throughout his brief, along the bottom of various pages, in brackets, multiple citations to a law review article addressing Battered Spouse Syndrome, cases regarding defamation and libel and cases regarding fraud. Appellant also includes, without explanation, cases addressing constructive desertion. *See e.g. Kruse v. Kruse*, 179 Md. 657, 22 A.2d 475 (1941); *Murphy v. Murphy*, 248 Md. 455, 460, 237 A.2d 523 (1968); *Dupree v. Dupree*, 26 Md.App. 481, 338 A.2d 323 (1975). These authorities, if applicable at all, go to the merits of the underlying divorce action and are not relevant to the issues now before us.

In support of these contentions, appellant asserts that appellee misrepresented herself as the primary caretaker before the trial court, in light of the fact that she "almost never hugged our children, ever gave them a kiss, never told them she loved them, or told them she was proud of them." He further asserts that appellee testified that she prepared most meals for the children, but that prior to the three-year period where the parties resided in separate rooms, he prepared nearly all of the meals for the children. Although appellant cross-examined appellee about the meals that she prepared for the children, appellant failed to put on evidence that he was prevented from cooking for the children as a result of appellee's behavior. Appellee denied these allegations during cross-examination and appellant did not present any additional evidence in this regard.

Appellant also intimates that appellee is an unfit parent because she lied in an application for a protective order. The protective order was not mentioned before the circuit court, nor was the application or any documents pertaining to the protective order entered into evidence.

█ Appellant cites no applicable legal authority in support of his arguments. The driving consideration for a court's custody determination is the best interest of the child. *Petrini v. Petrini*, 336 Md. 453, 468, 648 A.2d 1016 (1994)(citing *Monroe v. Monroe*, 329 Md. 758, 769, 621 A.2d 898 (1993); *McCready v. McCready*, 323 Md. 476, 481, 593 A.2d 1128 (1991); *Taylor v. Taylor*, 306 Md. 290, 303, 508 A.2d 964 (1986); *Ross v. Hoffman*, 280 Md. 172, 174–75, 372 A.2d 582 (1977); *Hild v. Hild*, 221 Md. 349, 357, 157 A.2d 442 (1960)). The Court of Appeals has explained:

> In this regard, trial courts are endowed with great discretion in making decisions concerning the best interest of the child.
>
> In *Hild, supra,* 221 Md. at 349 [157 A.2d 442], we observed:
>
>> for the purpose of ascertaining what is likely to be in the best interests and welfare of the child a court may

properly consider, among other things, the fitness of the persons seeking custody, the adaptability of the prospective custodian to the task, the age, sex, and health of the child, the physical, spiritual and moral well-being of the child, the environment and surroundings in which the child will be reared, the influences likely to be exerted on the child, and, if he or she is old enough to make a rational choice, the preference of the child. It stands to reason that the fitness of a person to have custody is of vital importance. The paramount consideration, however, is the general overall well-being of the child.

An even more comprehensive list of factors to be considered in making custody determinations is contained in *Montgomery County v. Sanders,* 38 Md.App. 406, 381 A.2d 1154 (1978[1977]), which distills the holdings in numerous cases of this Court delineating the governing criteria. Of course, the controlling factor, or guiding principle, in both custody and adoption cases is not the natural parents' interest in raising the child, but rather what best serves the interest of the child; the paramount consideration is what will best promote the child's welfare, a consideration that is of "transcendent importance." *In Re Adoption No. 10941,* 335 Md. 99, 113, 642 A.2d 201 (1994); *In Re Adoption No. A91-71A,* 334 Md. 538, 561, 640 A.2d 1085 (1994).

*Petrini,* 336 Md. at 469-70, 648 A.2d 1016.

■■■■ On appeal, we review the trial court's custody determination for an abuse of discretion. *Id.* at 470, 648 A.2d 1016 (citing *Davis v. Davis,* 280 Md. 119, 125, 372 A.2d 231 (1977)). In the case *sub judice,* the court acknowledged that both parents would be suitable custodial parents. In light of the comments of the children's attorney that the children, ages fifteen and thirteen, expressed a desire to stay together, that the youngest child strongly preferred to be with his mother, and that appellee testified to being the primary care taker on a day-to-day basis, we decline to hold, especially without any legal argument to the contrary, that the trial court abused its discretion in making this *pendente lite* determination.

■ The court's decision to award exclusive use and possession of the family home to appellee arose directly out of its determination that appellee would have sole physical and legal custody, as the court awarded it to the custodial parent. Appellee testified that she thought it best to keep the children in the same school districts and, if not awarded use and possession of the family home, she would try to find an affordable place in the same school districts. Md.Code (2006 Rep. Vol., 2009 Supp.), Family Law, F.L. § 8–206 provides trial courts with the discretion to award exclusive use and possession of the family home to the custodial parent. *See Bledsoe v. Bledsoe*, 294 Md. 183, 192–93, 448 A.2d 353 (1982) (observing that the legislature intended for an award of use and possession of the family home to be made when necessary for the children to continue to live in a familiar environment). Appellant again cites no legal error in the court's ruling, but merely asserts, without any legal support, that he should not be forced from his home and forced to look like he deserted his family. We see no reason to disturb the court's exercise of its discretion. Accordingly, we affirm the rulings of the trial court.

### *Alimony*

The next contention that we distill from appellant's brief is that the trial court erred in requiring him to pay appellee *pendente lite* alimony in the amount of $500 per month.[7] Again, appellant cites no authority and can point to no factually insufficient basis for the trial court's determination. The Court of Appeals recently reiterated:

"An alimony award will not be disturbed upon appellate review unless the trial judge's discretion was arbitrarily used or the judgment below was clearly wrong." *Solomon*

---

7. As best we can tell, the fifth question presented by appellant best articulates his claim: "Because of the nature of Plaintiff Komesi Bussell, does this mean that Defendant Blake Bussell was having an affair, he was not, so should B Bussell be punished, pay the fine of alimony, for breaking the legal [sic] binding contract of marriage, because of delusional thoughts?"

*v. Solomon*, 383 Md. 176, 196, 857 A.2d 1109, 1120 (2004) (quoting *Tracey v. Tracey*, 328 Md. 380, 385, 614 A.2d 590, 593 (1992)). "[A]ppellate courts will accord great deference to the findings and judgments of trial judges, sitting in their equitable capacity, when conducting divorce proceedings." *Tracey*, 328 Md. at 385, 614 A.2d at 593. "Thus, absent evidence of an abuse of discretion, the trial court's judgment ordinarily will not be disturbed on appeal." *Solomon*, 383 Md. at 196, 857 A.2d at 1120.

*Boemio v. Boemio*, 414 Md. 118, 124, 994 A.2d 911 (2010).

 It appears that appellant believes that he was ordered to pay alimony as a punishment, as he believes that the trial court credited his wife's claims that he committed adultery. We find no support in the record for appellant's claim. F.L. § 11–106(b) sets forth the factors for the trial court to consider when making alimony determinations. ". . . [A]n award of alimony *pendente lite* is made without an inquiry into the merits of the underlying action." *Guarino v. Guarino*, 112 Md.App. 1, 7–8, 684 A.2d 23 (1996) (citation omitted).

> We have stated that the "purpose of alimony *pendente lite* is to maintain the status *quo* of the parties pending the final resolution of the divorce proceedings," *Speropulos*, 97 Md. App. at 617 [631 A.2d 514], and that the award "is based solely upon need." *Komorous v. Komorous*, 56 Md.App. 326, 337, 467 A.2d 1039 (1983).

> With the passage of what is now § 11–101 of the Family Law Article, the duty by either spouse to pay alimony became statutory. *Hofmann v. Hofmann*, 50 Md.App. 240, 244, 437 A.2d 247 (1981).

*Id.* at 11, 684 A.2d 23.

 Appellant presents us with no basis for concluding that the trial court abused its discretion in awarding alimony *pendente lite* to appellee in the amount of $500 per month. Appellant himself conceded that appellee makes "about half" of the income that he brings in, which he acknowledged to be approximately $51,000, and sometimes more when supplemented with side jobs. Appellee introduced into evidence a

financial statement that indicated that appellee's monthly expenses were approximately $6,065 and estimated that her monthly income was approximately $2,142. The trial court did not abuse its discretion in requiring appellant to pay appellee $500 on a monthly basis pending the conclusion of the divorce trial in order to maintain status *quo.*

### *Miscellaneous Claims*

 Finally, we pause to acknowledge appellant's statement of requested relief. At the conclusion of his brief, appellant requests this Court to order appellee to (1) pay one-half of appellant's student loan, (2) pay a monetary award to appellant for the purpose of replacing destroyed artwork and (3) pay for appellant's "time and process of self-representation." None of these issues were raised before the trial court and we, therefore, decline to address them. Md. Rule 8–131(a).

**JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**